WILLIAM GILCHRIST v. D. W. MIDDLETON.

*Action to Recover Land—Tenants in Common—Ouster—Evidence—Grants—Entry—Pleading—Verdict—Judgment.*

1. Where a plaintiff offered a grant issued in 1847 upon an entry dated in 1801, and the defendant introduced a grant covering the same land, issued in 1842 on an entry made in 1801: *Held,* that the former grant was void upon its face, because it was issued contrary to law after the entry had lapsed, and could be collaterally impeached upon the trial of the usual issues in an action for the possession of land.

2. Where a grant appears upon its face to have been executed regularly and in proper form, it is competent to attack it in any action involving title by showing that, in fact, it covered land not subject to entry, or was issued contrary to a positive prohibition contained in a statute; but for fraud in its issue, a grant can be impeached only by a direct proceeding.

3. Though a grant offered by a plaintiff be void, he may avail himself of another introduced by the defendant to show title out of the State, and establish his own title by proving possession under color for seven years subsequent to the date of the latter grant.

4. The sole reception of the profits by one tenant in common of land, or by his bargainee, under a deed purporting to convey the whole interest for any period less than twenty years, is not an ouster, nor is the verbal refusal to let his co-tenant in, for a greater interest than such co-tenant is entitled to hold, an ouster.

5. Where one tenant in common brings an action against his co-tenant, claiming sole seizen in the land held in common, and the latter sets up in his answer a general denial of the title and right to immediate possession, as alleged, such denial is equivalent to a confession of ouster in ejectment, and precludes the defendant from afterwards setting up the co-tenancy on the trial for the purpose of subjecting the plaintiff to the payment of costs.

6. In such cases, the excluded tenant in common should demand of his fellow who is in possession to be let in to the extent of his true interest, and, on failure or refusal of the latter, within a reasonable time, to comply with such demand, the former may maintain an action for possession.

7. Where a plaintiff wrongfully claims in his complaint sole seizen in himself, his co-tenant in possession may subject him to the payment of the costs by averring in his answer what the undivided interest of each of the co-tenants really is, and avowing his willingness, if proper demand had been made, to have let the plaintiff in and accounted for rents received.

8. One tenant in common is allowed to sue alone and recover the entire interest in the property against another claiming adversely to his co-tenants as well as to himself, in order to protect their rights against trespassers and disseisors.

9. But where it appears from the proof offered to show title, or is admitted on the trial, that a defendant who has confessed ouster by denying the plaintiff's title is, in reality, a tenant in common with the latter, it is the duty of the Court to instruct the jury to ascertain and determine, by a specific finding, the undivided interest of the plaintiff, and to assess his damages in proportion to such actual undivided interest.

This was an action to try title to land and to recover possession, tried by *Bynum, J.,* at the February Term, 1890, of the Superior Court of RICHMOND County, upon the pleadings and issues set out in the record proper.

The plaintiff introduced—

1. A grant from the State to Duncan McFarland, dated 13th January, 1847, on an entry dated July 4th, 1801.

2. A deed from John McKay to J. B. Buchanan, dated September 25th, 1863.

3. A mortgage from Buchanan to Lilly Bros., dated April 20th, 1875.

4. A decree for the sale of mortgaged land at Spring Term, 1880, of the Superior Court of Richmond County.

5. A sale by a Commissioner, J. D. Shaw, appointed to sell, to E. Lilly, and a decree confirming the sale at Fall Term, 1880.

6. A deed from Shaw, Commissioner, to E. Lilly, April 25th, 1881.

7. A deed from E Lilly to plaintiff, May 2d, 1881.

It was admitted that the grant to McFarland and the deeds and mortgages above set out covered the *locus in quo,* and that the proceedings for the foreclosure of the Lilly Bros. mortgage were all regular.

Plaintiff then introduced as a witness Ed. Buchanan, who testified: He was a brother of J. B. Buchanan, who purchased the land from John McKay; that he knew the disputed land; that J. B. Buchanan went into possession of it in 1863, cleared a part of it, got firewood on a part of it, and continued in possession, clearing and cultivating, until he died in 1882; that he cleared in all, at different times, and was cultivating twelve or fifteen acres; that he rented it the last year he lived there from Lilly Bros , as he understood.

Upon cross-examination testified: Buchanan went in possession far back as he could recollect, about 1863; that witness was born in 1855; that he cut firewood on it every year, as he needed it; that he did not live on the land, but about 100 yards from the line, and sometimes got firewood on the land he lived on. It was admitted the *locus in quo* was 100 acres.

Plaintiff testified in his own behalf, that he found J. B. Buchanan in possession when he purchased from Lilly, and that he rented to him until he died; that for the year 1881 he was to pay to plaintiff $200 rent.

The defendant claimed title under the grant to McFarland, introduced by the plaintiff, and for the purpose of connecting himself with that grant introduced—

1. The record of a petition for partition between Duncan McFarland and others, against William Cooper McFarland and others, who were the heirs at law of Duncan McFarland, the grantee (this record showed the petition to have been filed at July Term, 1847, of the Court of Pleas and Quarter Sessions of Richmond County), and the decree ordering partition; the appointment of commissioners and the report, and the confirmation of the report of the commissioners at July Term, 1849; the registration of the report, &c. All of which is admitted to be regular, and it is admitted that in the land assigned Tryon McFarland in severalty is located the *locus in quo.*

2. A petition for partition between John G. Pearson and wife and Duncan McFarland, as heirs at law of Tryon McFarland, which record is admitted to be regular, and which sets apart to John G. Pearson and his son Tryon the portion of land which covers the *locus in quo* — the decree being granted at April Term, 1852, of the Court of Pleas and Quarter Sessions of Richmond County. It was admitted that Pearson married Mary Little McFarland, a daughter of Tryon McFarland, who died before the decree of partition at April Term, 1852, and had by her one son, Tryon Pearson, who died in February, 1872

3 A deed from Buchanan, Sheriff of Richmond County, to Duncan McCall, dated January 17th, 1854, conveying to him the interest of J. G. Pearson in the land assigned to him and his son Tryon Pearson. It being admitted that the interest of John G. Pearson was that of a life-estate as tenant by the curtesy.

4. A deed from Duncan McCall to Ferdinand McLeod, dated September 24th, 1857, conveying to him the life-estate of J. G. Pearson in the land purchased by him at the execution sale by Buchanan, Sheriff.

5. A deed from John G. Pearson to Addison Stevens, dated April 17th, 1875, conveying to him a fee-simple in the land set apart to him and his son Tryon Pearson in the partition proceedings. It was admitted that Tryon Pearson, the son of John G. Pearson, died unmarried and without brothers or sisters, and that his father, John G. Pearson, inherited from him.

6. A deed from A. H. Stevens and wife to Mary A. McCall, dated 7th January, 1878, which conveyed the land purchased from Pearson by Stevens.

7. A deed from A. D McCall and wife Mary A. McCall to defendant, dated 31st March, 1879, conveying to him the same land.

Defendant next introduced a grant to Duncan McLaurin, dated March 31st, 1842, on an entry made in 1841, which, it was admitted, covered the *locus in quo.* Next a deed from Duncan McLaurin to Ferdinand McLeod, (admitted to be the same Ferdinand McLeod to whom Duncan McCall conveyed on September 24th, 1857). Next a deed from Ferdinand McLeod to John L. Fairley, dated 16th April, 1858. Next, letters of administration *de bonis non* on the estate of John L. Fairley, granted to defendant on 7th day of May, 1876. Next the record of the application of the defendant as administrator *d. b. n.*, to sell land for assets, decree of sale and order of confirmation, all admitted to be regular, the summons being issued July 10th, 1878. Next a deed from defendant as administrator *d. b. n.* of John L. Fairley to William H. McLaurin, dated 17th March, 1879. Then a deed from William H. McLaurin to defendant, dated 18th March, 1879. It is admitted all these deeds cover the *locus in quo.*

For the purpose of this appeal, it was admitted that the estate of John L. Fairley descended to five children, three of whose claims to the land are not barred by the statute of limitation, and two of whose claims are barred by the statute.

Robert Leak, a witness for the defendant, testified that he had a conversation with John B. Buchanan in 1874 or 1875 about the land in dispute; that Buchanan told witness he wanted him to cut all the largest timber he could, as he (Buchanan) did not know how long he would own it. There was evidence tending to show that John G. Pearson died during the pending of this action.

Plaintiff asked the following special instructions—

1. That the deed from Buchanan, Sheriff, to Duncan McCall did not convey title.

2. That if the jury believe that the plaintiff and those under whom he claims have been in the adverse possession of the land in dispute under color of title, cultivating the same, continuously getting wood from it from year to year, from the 1st of January, 1870, to the commencement of this action plaintiff would be entitled to recover.

3. That if the jury are satisfied that Tryon Pearson, son of John G. Pearson, died in February, 1872, then the whole estate would be in John G. Pearson, and the statute of limitation would run against him, and those claiming under him, from that date.

4. That if the jury believe that the plaintiff, and those under whom he claims, had the continuous and adverse possession of the land described in the complaint from January 1st, 1870 to 1882, and that the land was granted to Duncan McLaurin, that the plaintiff is entitled to recover the estate which descended to Angus Fairley and Mrs. McIntyre, they not being under disability.

5. That if the jury believe that the plaintiff, and those under whom he claims, have been in the continuous and adverse possession of the land from January 1st, 1870, to

1882, and that the land was granted to Duncan McLaurin, then the plaintiff would be entitled to recover that portion of the estate of Francis Fairley and Eugenia Fairley which descended upon Angus Fairley and Mrs. McIntyre at the death of Francis and Eugenia.

The defendant asked for the following special instructions:

1. That if the jury find that John G. Pearson died during the pendency of this action, then the plaintiff cannot recover the land in dispute, or the possession thereof, and they will find the first and second issues in favor of the defendant. That is, that the plaintiff is not the owner of the land, and the defendant is not unlawfully in the possession thereof.

2. That if John G. Pearson died during the pendency of this suit, the plaintiff cannot recover the land in dispute, but can recover, at most, only the *mesne* profits or damages.

3. That if the jury find that the plaintiff and defendant are tenants in common of the disputed land, the plaintiff cannot recover rents and profits or damages, as there is no evidence of a demand on defendant for the same.

4. That, upon the evidence, if believed, the plaintiff cannot recover more than as a tenant in common with defendant.

5. That, not being more than a tenant in common, he cannot recover any damages, he not having made any demand for same on defendant.

6. That if the jury find that D. W. Middleton qualified as administrator of John L. Fairley on May 7th, 1878, and John L. Fairley died in August, 1862, the possession of the plaintiff, and those under whom he claims, would not be adverse to him as the purchaser of this land at his sale for assets. The said administrator has one year after his qualification, under section 164 of *The Code,* within which to bring his action for the sale of the land for assets.

7. If the jury find that John L. Fairley died in August, 1862, or in 1862, and D. W. Middleton qualified as adminis-

trator in 1878, the possession of the plaintiff, and those under whom he claimed, would not be adverse to the creditors of John L. Fairley, or to his administrator, D. W. Middleton, and the sale of the administrator for assets would pass title to the purchaser at such sale, notwithstanding such possession.

8. That the recitals in a Sheriff's deed are *prima facie* evidence of the facts recited.

9. That if there was a judgment for costs against John G. Pearson, or John G. Pearson and his son Tryon Pearson, and execution to the Sheriff on same, and sale thereunder, and a purchase by Duncan McCall (who was not a party to said judgment or execution) on the 16th January, 1854, the setting aside of said execution on the 17th January, 1854, could not affect the title of McCall.

10. That said action of the Court could not, consequently, affect the title of those claiming under McCall; that the setting aside of the said execution on January 17th, 1854, could not affect McCall's title, if the jury believe the evidence.

11. That the County Court, by setting aside the execution, could not affect McCall's title as purchaser, unless he had notice of the motion or proceeding to set aside execution.

12. That there is no evidence that Duncan McCall had notice of the motion to set aside said execution, or that he had his day in Court to resist it.

13. That if the jury believe the evidence, there was a judgment of the Court of Pleas and Quarter Sessions authorizing the said execution and sale.

14. That if the jury believe the evidence, Duncan McCall acquired the interest of John G. Pearson in the land in dispute under said execution sale, the location of the land being admitted.

15 That Duncan McCall acquired the interest of John G. Pearson in the land in dispute at said execution sale, if the jury believe the evidence.

16. That the Sheriff's deed relates back to the day of the sale under execution, and that the purchaser would acquire the interest or estate of defendant in execution as of the day of sale.

17. That the fiction that the proceedings of a Court relate back to the first day of the term of the Court will not be allowed to divest a title acquired under an execution sale made during the first day of the term, provided the action or proceedings of the Court, after the execution sale.

(This 17th instruction is applicable only to the deed from Buchanan, Sheriff, to Duncan McCall, and is given to the jury as law, but, as immaterial to this case under the view of the law, the Court holds as embraced in the other instruction given.)

18. That the action and order of the Court setting aside the execution in the case of John G. Pearson and others against D. B. McFarland and others is void as to Duncan McCall, the purchaser at the execution sale, as he had no notice of the motion to set aside execution, or rather that there is no evidence that he had any notice.

19. That the erasure of the return of the Sheriff on said execution in said case cannot affect the title of Duncan McCall acquired under the execution and sale.

20. That the plaintiff cannot recover damages for any use or occupation of the land by the defendant after the death of John G. Pearson.

21. That the question of a conflict of grants and *mesne* conveyances thereunder does not apply in this case, because (1) the plaintiff does not claim under either of said grants; (2) the principle that the State cannot grant but once applies only when the two grants are those under which the plaintiff claims, as the defendant is entitled, in order to defeat the plaintiff's recovery, to show title in any one, that is, title out of the plaintiff.

His Honor gave all the instructions asked for by plaintiff, except the third, and his Honor qualified this by stating to the jury that the statute of limitation would not run against the defendant as to the three-fifths of the interest in the land, as, by the admitted fact in the case, three of the heirs of John L. Fairley are not barred. His Honor refused the following instructions asked for by defendant, to-wit, the 1st, 2d, 2d, 5th, 6th, 7th, 9th, 10th, 11th, 14th, 15th, 18th, 19th and 20th, and gave the following, to-wit, 8th, 12th, 13th, 16th, and 17th as modified, and gave the 4th prayer for instructions asked by defendant, except as to damages and costs, and this part of the instructions he refused.

To each and every one of the instructions given by the Court at the request of the plaintiff, the defendant duly excepted and entered an exception as to each instruction so given, and the defendant also excepted to the refusal of the Court to give each of the instructions requested by him, and entered an exception to the refusal of the Court to give said instructions as they were asked. The defendant also excepted to the ruling of the Court modifying his fourth prayer for instruction.

His Honor charged the jury as follows:

1. The deed from Buchanan, Sheriff, to McCall conveyed no title.

2. In no event is the plaintiff entitled to recover more than two-fifths of the land in dispute, as defendant has shown that he has title to three-fifths under the Fairley deed.

3. The burden is upon the plaintiff to satisfy the jury, by a preponderance of the evidence, that he has a good title against all the balance of the world; it makes no difference whether the defendant has shown title in himself or not. The question is, has the plaintiff shown a good title in himself?

GILCHRIST *v.* MIDDLETON.

4. The deed from McKay to J. B. Buchanan is colorable title, and the plaintiff has traced that title to himself, and it is admitted it covers the disputed land, and seven years' adverse possession under color of title will give a good title against persons not under disability; but the burden is upon the plaintiff to fully satisfy the jury in this case that he has had adverse possession for seven years under claim of title, and under known and visible boundaries. Has the plaintiff satisfied you that he, and those under whom he claims, has had seven years' adverse possession under known and visible boundaries? If he has, he is entitled to recover, and your answer to the first issue will be, Yes, to two-fifths. If the plaintiff has satisfied you that he has had seven years' adverse possession, as above stated, of a part of the land, cultivating a part and getting firewood off of a part, in this case there being no evidence of any possession of any other part of the disputed land by any other person, or under any other title, the law presumes his possession to extend to the boundaries as claimed by him. The seven years' adverse possession must begin January 1st, 1870, and extend to seven years, as the time from 1863 to January 1st, 1870, is not to be counted by you.

If you answer the first issue Yes, to two-fifths, then you will answer the second issue Yes, to two-fifths.

If you answer the first and second issues Yes, then the plaintiff is entitled to two-fifths of the annual rental value, as you may find it, under the evidence, that is, find what is the value of the rent for one year, and the plaintiff is entitled to two-fifths of that sum, and so for every year, beginning at the commencement of the suit, up to this time, and add these sums together, and the aggregate will be your answer, which you will give in figures.

The defendant excepted to the instructions of the Court—

1. That the deed from Buchanan, Sheriff, conveyed no title to Duncan McCall.

107—43

2. That the Court charged the jury that the plaintiff could recover two-fifths of the land in dispute.

3. That the Court charged that if the jury found the first issue Yes, as to two-fifth, then they will find the second issue Yes, as to two-fifths of the land in dispute.

4. That if the jury answer the first and second issues Yes, then the plaintiff is entitled to recover two-fifths of the annual value of the land as you may find it under the evidence.

5. That his Honor charged the jury, in substance, that plaintiff might recover two-fifths of the land in dispute

6. That his Honor charged the jury that the plaintiff might recover two-fifths of the rents and profits, or damages for detention in withholding the property.

7. Defendant further excepts in this case that his Honor adjudged that defendant should be taxed with costs in this action.

Defendant moved for a new trial upon the foregoing exceptions, and for judgment, as is stated in the record. Motion denied, and defendant excepts. Judgment, and appeal by defendant.

The defendant excepts to the proceedings and judgment in this case—

1. Because his Honor received incompetent testimony after objection by the defendant, as stated in the case.

2. Because his Honor rejected and ruled out competent testimony, to which ruling the defendant duly excepted, as stated in the record.

3. Because his Honor refused to give the prayers for instructions as submitted by the defendant, and which are set forth in the case, to which refusal the defendant duly excepted.

4. Because his Honor refused the defendant's prayers for judgment, and each of them, as set forth in the record.

5. Because his Honor refused and denied the defendant's motion for a new trial, as made and set forth in the case and record.

6. Because his Honor charged the jury, as set forth in the record, contrary to the defendant's prayers for instructions, and contrary to law, in the particulars set forth in the case and pointed out by defendant's exceptions to the charge.

7. That his Honor charged the jury that the deed of Buchanan, Sheriff, to McCall did not pass title, as it was afterwards set aside by the County Court.

8. The defendant further excepts to the rulings and charge of his Honor, upon the grounds set forth in the case, and renews each and every exception therein stated, and those stated in the record.

9. That the Court adjudged that the defendant should pay the costs of this action, whereas the Court should have adjudged that plaintiff should pay the costs, or, at most, that the costs should be apportioned according to the interests recovered by the parties respectively, and adjudged to belong to each.

The plaintiff demanded judgment against the defendant—

1. For the possession of said land.

2. For two hundred dollars damages sustained by plaintiff by reason of the unlawful withholding of possession of same from him by defendant.

3. For the costs of this action.

The defendant, answering, made general denial.

The following were the issues submitted to the jury, and the responses:

1. Is the plaintiff the owner, and entitled to the possession of the land in dispute? Answer—Yes, to two-fifths.

2. Does the defendant unlawfully withhold the possession from the plaintiff? Answer—Yes, to two fifths.

3. Is plaintiff entitled to recover damages, and, if so, how much? Answer—$76.80.

4. Has John G. Pearson died during the pending of this action? Answer—Yes.

5. At what time did said John G. Pearson die? Answer—Between 1883 and 1884.

### JUDGMENT.

"This cause coming on to be heard, and the jury having found that the plaintiff is the owner, and entitled to recover the possession of, two-fifths of the land described in the complaint, and having assessed the plaintiff's damages at $76.80, on motion of counsel for plaintiff it is ordered and adjudged that plaintiff recover of the defendant two-fifths of the land described in the complaint, and $76.80 damages, and the costs of this action, to be taxed by the Clerk of this Court."

The defendant excepted to this judgment, but not as to its form.

In this cause the defendant moves—

1. For judgment upon the pleadings and issues, and verdict for the land and costs. Motion denied, and defendant excepts.

2. Motion in arrest of judgment by the defendant as to the two-fifths of the land, damages and costs. Motion denied, and exception by defendant.

3. Motion for a new trial as to the two-fifths of the land, damages and costs. Motion denied, and exception by the defendant.

4. Motion for a new trial generally. Motion denied, and exception by the defendant.

5. Motion for judgment *non obstante veredicto*. Motion denied, and exception by the defendant.

*Mr. D. J. Shaw*, for plaintiff.

*Messrs. Burwell & Walker* (by brief), and *Jones & Tillett* (by brief), for defendant.

AVERY, J.—after stating the facts: Two grants were introduced, both of which covered the land in controversy. The one issued to Duncan McFarland, January 13th, 1847, on an entry dated July 4th, 1801, was offered by the plaintiff, while the other, introduced by the defendant, was issued to Duncan McLaurin, March 31st, 1842, on an entry made in 1841.

The plaintiff offered, also, a deed from John McKay to J. B. Buchanan, dated September 25th, 1863, together with several *mesne* conveyances, connecting the plaintiff by a regular chain with said Buchanan, and offered testimony tending to show continuous possession under said deeds as color of title on the part of plaintiff through his tenant, and those under whom he claims, from September 25th, 1863, till 1882.

The defendant introduced a deed from Duncan McLaurin (the grantee in the patent of 1842) to Ferdinand McLeod, and also a subsequent deed from said McLeod to John L. Fairley, dated April 16th, 1858. It was in evidence, also, that John L. Fairley died before the year 1862; that Thomas Gibson qualified as his administrator, and died in 1872, and that the defendant was appointed and qualified as administrator *de bonis non* of said Fairley, May 7th, 1876. The defendant, as administrator of said Fairley, instituted a special proceeding in July, 1878, to sell the land conveyed by McLeod to him (which, it is admitted, covers the land in dispute, and is the same granted to McLaurin in 1842), and under a decree in said proceeding it was sold to make assets, when William H. McLaurin became the purchaser. The defendant, as administrator, conveyed to said McLaurin in pursuance of said decree of March 17th, 1879, and on

the next day, March 18th, 1879, said McLaurin conveyed the same land to the defendant. For the purposes of this appeal, it was admitted that the estate of John L. Fairley descended to his five children, three of whose claims to the land are not barred, and two of whose claims are barred, by the statute of limitations.

The defendant also attempted to establish his title by a chain of *mesne* conveyances connecting him with the grant to Duncan McFarland. The well-settled rule is, that an entry of land creates an inchoate equity in it, which, upon the payment of the prescribed amount of purchase-money to the State within the time limited by the law (*The Code*, § 276; Rev. Stat., ch. 42, § 11; Act of 1808, ch. 759), will entitle the enterer to a grant, and where a junior enterer has, meantime, with actual or constructive notice of the older entry, procured a grant for the same land, the latter may be declared a trustee for the former, and compelled to convey the land to him. *Plemmons* v. *Fore*, 2 Ired. Eq., 312; *Featherstone* v. *Mills*, 4 Dev., 596; *Harris* v. *Ewing*, 1 Dev. & Bat. Eq., 369. Where an enterer allows his entry to lapse before taking out his grant the entry becomes null, and any grant founded upon it is also void on its face, and, even without a direct proceeding to impeach it, will be treated by the Courts as inoperative and insufficient to divest title out of the State, because it is apparent on inspection that it was issued without authority of law, when the efficacy of the entry was gone by the efflux of time, and, in this case, after the right of another, who had shown more diligence, accrued. *Stanly* v. *Biddle*, 4 Jones Eq., 383; *The Code*, §§ 2767–2768; Rev. Stat., ch. 42, §§ 11–12; Act of 1809, ch. 771; *Wilson* v. *Land Company*, 77 N. C., 457; *Horton* v. *Cook*, 1 Jones Eq., 270; *Bryson* v. *Dobson*, 3 Ired. Eq., 138.

Grants that appear upon inspection to have been issued in the face of any positive prohibition contained in a statute, have been uniformly treated even in legal, as distinguished

from equitable, proceedings as utterly void; but Courts of law, under the former practice, would refuse to hear testimony *dehors* a grant to impeach it for fraud in obtaining it, and would hear parol evidence to invalidate it only on the ground that the law forbade it to be issued. *Stanly* v. *Biddle, supra; Avery* v. *Strother*, Coop. Rep., 434 (496); *Stanmire* v. *Powell*, 13 Ired., 312; *Strother* v. *Cathey*, 1 Murph., 162; *Brown* v. *Brown*, 106, N. C., 451; *Harshaw* v. *Taylor*, 3 Jones, 513.

Judge HENDERSON, in *Tate* v. *Greenlee*, 2 Hawks, 231, in discussing the question when a grant can be treated as invalid in the trial of actions of ejectment, says: "But, I cannot bring myself to believe, if the cause of its nullity is apparent upon its face, that the Court must shut its eyes against the defect and declare the grant to be valid. But if in such a case parol or other evidence *dehors* the grant is offered, it should be rejected, not because the grant, if true, is not sufficient to avoid it, but that the party comes unprepared to resist or controvert it." *Harris* v. *Norman*, 96 N. C., 59.

While the presumption is, when no defect of authority appears upon the face of the grant, that the executive officers who have the right to issue it have acted within the scope of their general powers, it is otherwise when, by reading it, it is manifest that the entry had become void before its issue. With such apparent defect of power in the maker, it becomes subject to the attack in the trial of issues involving the title to land, just as any deed may be impeached in such trials for want of capacity in the maker or of fraud in the *factum*, notwithstanding the fact that the grantor is the sovereign State. *Jones* v. *Cohen*, 82 N. C., 75; *Helms* v. *Green*, 105 N. C., 259; *Mobley* v. *Griffin*, 104 N. C., 112. The rule laid down by PEARSON, C. J., in *Harshaw* v. *Taylor*, 3 Jones, 513, is the familiar principle, that where an officer or tribunal has general jurisdiction the presumption is that they have

acted within the purview of their powers, and that their acts were valid. But this presumption will not be allowed to prevail, even in a trial of issues involving only title to land, where it appears that the executive officers have issued a grant upon a lapsed entry, and the presumption of its validity, as against another grant free from such defect, is thereby rebutted. This proposition is not the less true because, in the case of *Lovinggood* v. *Burgess*, Busbee, 407, it was held that a grant issued by the proper authority, and apparently valid, could not be collaterally attacked by showing *dehors* the grant some irregularity, fraud or mistake in the preliminary proceedings.

But treating the grant to McFarland as void, the plaintiff, though the burden was upon him in the incipiency of the trial to show title good against the world, is not precluded from taking advantage of the fact that the defendant had proven title out of the State by offering and locating the McLaurin grant. When, in addition, it appeared that Buchanan went into possession of the disputed land under the deed from McKay to him in 1863, and continued in possession, cultivating and clearing land, either in his own right, or as tenant of the plaintiff, or of the intermediate grantees, through whom the latter claimed until the year 1882, it followed, of course, that the possession under color of title, even exclusive of the time elapsing before January 1st, 1870, was sufficient to mature title in the plaintiff, except against persons laboring under some disability that suspended the operation of the statute of limitations as to their rights It is admitted that the plaintiff's right of action against three of the heirs at law of Fairley is barred, while the statute was running as to the other two long enough to mature title in the plaintiff for their undivided interests. It is not necessary to consider any exception to the testimony, or charge of the Court, growing out of the attempt on the part of the defendant to establish title through the void

grant to McFarland, as he did not claim to have held possession under the conveyances subsequent to the grant. Considering the McFarland grant as void, we are relieved, for that reason, if not upon other grounds, from discussing or passing upon the exceptions to evidence growing out of the attempt by the defendant to trace his title to that source, as well as those to so much of the charge of the Court as related to the same subject.

We come, then, to the question, whether the denial of plaintiff's title and right to possession was, in law, an ouster by the defendant of his co-tenant.

It is a well-settled rule of law that a tenant in common cannot maintain an action against his co-tenant for the possession, or title and possession, of their undivided land, unless an actual ouster is proved or *admitted by the pleadings.*. *Halford* v. *Tetherow*, 2 Jones, 393.

It is conceded that, in order to prove an actual ouster by conduct *in pais*, it must be shown that the tenant in possession, in refusing the lawful demand of his co-tenant, or otherwise, asserted a dominion over the common property irreconcilable with the recognition of the rights of the latter. Hence, it has been held—

1. That the sole reception of the profits of land by one tenant in common is not an ouster, and will raise no presumption of an ouster against his fellows until he has enjoyed the exclusive profits of such rents for twenty years, and the grantee of a tenant in common, though he may hold possession under a deed purporting to convey the whole, stands, in this respect, precisely in the position of his grantor. *Linker* v. *Benson*, 67 N. C., 150; *Caldwell* v. *Neely*, 81 N. C., 114; *Page* v. *Branch*, 97 N. C., 97.

2. That where a tenant in common of a tract of land demands of his co-tenant, who is in possession of it, the whole tract, instead of asking to be let into possession to the

extent of his interest, the refusal to comply with such a demand is not an ouster. *Meredith* v. *Andres*, 7 Ired., 5.

3. That so long as the relation of tenant in common of land exists between two persons, an action of trespass will not lie in favor of one against the other for merely asserting dominion over the common property. *McPherson* v. *Seguine*, 3 Dev , 153.

In stating the foregoing well-established principles, we have given a summary of the points settled by all the authorities cited and relied upon by the defendant to sustain the position that the plaintiff, upon the admitted facts, or upon the proof and the pleadings, cannot recover, because there is no sufficient evidence of an ouster, and that the Judge below should have so instructed the jury.

It seems, in this case, that neither party pursued the proper or advisable course in the attempt to assert his rights. The plaintiff, if he did not intend to incur any risks, ought to have made a formal demand to be put into possession as to two undivided fifths of the land with the defendant, and on refusal or failure within a reasonable time on the part of the latter to comply with such demand, he would have had the unquestioned right to maintain an action for possession. When the plaintiff brought suit, claiming the whole, and without giving any previous notice, the defendant could have answered that he was holding possession as a tenant in common for the benefit of both himself and the plaintiff, and had always been ready and willing to let in his co-tenant to the extent of his interest, which was two-fifths, and to account for any rents received, if the plaintiff had made demand to be so let in, and for an account of profits. *Johnston* v. *Pate*, 83 N. C., 110. Upon the finding or admission that the interests of the parties were as averred in the answer, the defendant would have been entitled to judgment for costs. Sedgwick & Wait T. of T. to Land, §§ 283 and 284. But the blunder of the plaintiff was cured when

the defendant set up an unqualified denial of the claim of sole seizin on the part of the plaintiff. *Allen* v. *Sallinger*, 103 N. C., 17; *Ibid.*, 105, N. C., 333. When a defendant deliberately waives his right and disregards his opportunity to admit by answer or disclaimer the true interest of the plaintiff, and then attempts to deny the ouster, he cannot complain that he loses the benefit of the relation of co-tenant by his denial of its existence. It has been generally, if not universally, held by the Courts in this country that a denial of a plaintiff's title or right of entry, or an averment that the defendant held adversely against all persons or the claim of exclusive possession, with a plea of "not guilty," was an admission of actual ouster. *Harrison* v. *Taylor*, 33 Mo., 211; *Siglan* v. *Van Riper*, 10 Wend. (N. Y.), 414; *Miller* v. *Myers*, 46 Cal., 535; *Grier* v. *Tripp*, 56 Cal., 209; *Noble* v. *McFarland*, 51 Ill., 226; *McCallum* v. *Boswell*, 15 U. C. Q. B., 343; *Scott McLeod*, 14 U. C. Q. B., 574. In *Classon* v. *Rankin*, 1 Duer. (N. Y.), 357, Chief Justice OAKLEY laid down the rule that "a denial in the defendant's answer of all right, title and interest in the plaintiff, is an admission that his own possession is adverse, and may, therefore, be treated as a confession of ouster, superseding the necessity of proof upon the trial." It is true that Judge PEARSON, in *Halford* v. *Tetherow*, 2 Jones, 393, after laying down the rule that "one tenant in common cannot sue his fellow, unless there is an actual ouster either proven or *admitted by the pleading*," declares that putting in the plea of not guilty in ejectment, without entering into the consent rule, was not an admission of "an actual ouster," and in this respect differed from the Supreme Court of Illinois. But, conceding that the principle stated in that case was correct, this Court, in *Allen* v. *Sallinger*, followed the rulings of the Court of New York, that, under the new procedure, where the title is in issue, a general denial of the allegations of the title, and especially of the right to immediate possession, is unques-

tionably tantamount to the confession of ouster in the fictitious action of ejectment. So that the pleadings in this case place the plaintiff and defendant in precisely the same position as the parties in *Halford* v. *Tetherow* would have occupied towards each other if the fact had been set out in the record that they had entered into the consent rule, which Judge Pearson declared would have been an admission of ouster in the pleadings. It is not reasonable to suppose that the defendant, when it has been settled that the answer is to be construed as an admission of ouster, will any longer insist that it was erroneous to render judgment that the plaintiff be let into possession as to two undivided fifths, or to instruct the jury, that if they found that by continuous adverse possession he had acquired title to that portion of the whole, they would find a wrongful possession on the part of the defendant to the same extent, and assess as the damages two-fifths of the value of the whole of the land. If defendant's possession was adverse, the only question that arises out of that admission is, whether there shall be judgment against him for the sole and exclusive right to the land in dispute, and for the whole of the rents, or for the undivided fractional interest of which the jury find him the rightful owner. One tenant in common of land may sue alone and recover the entire interest in the common property, against another claiming adversely to his co-tenants as well as to himself, though he actually prove title to only an undivided interest. This he is allowed to do, in order to protect the rights of his co-tenants against trespassers and disseizors. But where it appears from the proof offered to show title, or is admitted, as in this case, that a defendant, who has confessed ouster by denying the plaintiff's title, is in reality a tenant in common with the latter, it is the duty of the Court to instruct the jury, by a specific finding, to ascertain and determine the undivided interest of the plaintiff. This

course obviates the danger of concluding the defendant by a general finding that the plaintiff is the owner.   The principal enunciated in *Allen* v. *Sallinger,* 103 N. C., 14, and approved in *Lenoir* v. *Mining Company,* 106 N. C., 473, brought into perfect harmony the rulings of this Court in *Overcash* v. *Kitchie,* 89 N. C., 384, and in *Yancey* v. *Greenlee,* 90 N. C., 317, by showing how one tenant in common might sue a trespasser, who is infringing upon the rights of himself and his co-tenants, and recover the entire land, or sue his co-tenant, who simply refuses to recognize his right in his answer, and recover such interest as he may establish title for.

Even if we concede the right of the defendant to have the exceptions last filed passed upon, we think that we have disposed of every exception in the discussion of general principles.   A large number of exceptions to the evidence grew out of the futile attempt on the part of the defendant to establish a chain of title through the void grant to McFarland, and, as already stated, need not be considered if the grant is void upon its face.

There is no error, and the judgment must be affirmed.

No error.