JOHN R. FOSTER et al. v. SIDDIA HACKETT.

*Deed—Contingent Remainder—Estoppel—Ejectment—Tenants in Common.*

1. While one tenant in common suing a trespasser in ejectment and proving title to an undivided interest is entitled to judgment for the possession of the whole land, if the evidence establishing his right demonstrates that others than the defendant hold as co-tenants the other undivided interests and that the action enures to their benefit, yet, when the defendant is a co-tenant, the plaintiff should have judgment only for the recovery of the interest to which he shows title.

2. A warranty deed by one having only a contingent remainder in land passes the title, by way of estoppel, to the grantee, as soon as the remainder vests by the happening of the contingency upon which such vesting depends.

3. *Quære*, whether a conveyance or assignment of a contingent interest in land for a valuable consideration would be upheld by a court of equity as an equitable assignment or contract to convey upon the happening of the contingency and the vesting of the estate. In such case, however, the grantee should set forth and plead specifically such equity.

ACTION to recover land, tried at Spring Term, 1892, of WILKES Superior Court, before *Armfield, J.*

The plaintiffs alleged that they were the owners of certain tracts of land set out in the complaint, and that the defendant was in possession and wrongfully withholding the same. The defendant admitted possession of the land, but denied that it was unlawful, and claimed to be the owner thereof by reason of a sale of the same by James Calloway, executor of Mildred Goforth, deceased, under a power given in the will. But afterwards, by a codicil of the said will, the first tract of land mentioned in the complaint was left in trust to one Foster for the benefit of her two daughters, and in the event that they died without heirs, then to go to the heirs of Mildred Goforth, etc. That the defendant had been in quiet and peaceful possession of same, under color of title by known and visible boundaries, for seven years prior to the bringing of this action.

The plaintiffs introduced in evidence the will of Mildred Goforth with its several codicils, the material points of which were as follows:

"*Item third.* The balance of my property, land, negroes, stock, household and kitchen furniture that I may be possessed of, or in any way may be coming to me after my death, I will to be sold by my executor at public sale, and I do hereby empower him to sell and convey the same, and the money arising from the sale thereof, after paying all debts and the above legacies and bequests, to be equally divided among all my children, to-wit: John Goforth, Wil-

liam Goforth, Lucy Foster, Levinia Foster, Amelia Goforth, P. G. Goforth, A. D. Goforth, and Pheba Goforth."

*Codicil.*—"I give and bequeath to my two daughters, Anna D. Goforth and to Pheba Goforth, and to the longest liver of them, that part of my tract of land on which I live, lying on the north-east side of Lewis Fork, including my dwelling-house, to have and to hold during their natural lives, and to the longest liver of them, and then if they or either of them should leave surviving the longest liver of them lawful heirs of their own bodies, then said land to descend to said heirs according to law. But in default of them, or either of them, leaving such heirs surviving them, then at the death of the longest liver of them the said land is to revert to my lawful heirs; and for the more certainty and better security of my two daughters before named, and to the end that they never may during their natural lives be deprived of the full benefit of said lands, I do hereby make and convey the legal title of said lands into the hands of my grandson, Achilles Foster, to hold in trust for the use and benefit of said two daughters aforesaid, and according to the aforesaid terms and conditions, and for no other use or purpose whatever."

Plaintiffs introduced Francis Ellen as a witness, who testified that he knew Mildred Goforth, the testatrix; that he knew the plaintiffs; that they are the children of Lucy Foster, a daughter of Mildred Goforth, and who married Anthony Foster. That Anthony and Lucy were both living at the date of the sale of Dr. James Calloway as executor of the said Mildred, but are both dead now. That he knew the said Pheba Goforth and Anna D. Goforth; they are both dead. That *Anna died in 1886 and Pheba in 1887;* that neither of them was ever married, and left no children. He also testified that Mildred Goforth had the following children: John Goforth, William Goforth, Lucy,

who intermarried with Anthony Foster; Milley, who married Edmund Tilley; Levinia, who married —— Foster; Delpha, who married —— Rose; Pheba and Anna D. Goforth, eight children.

Plaintiffs then introduced evidence for the purpose of showing it was not necessary for the executor to sell the land in controversy to pay debts, when the defendant admitted that it was not. Plaintiffs then offered evidence as to the rental value of the land, and then rested their case.

The defendant introduced J. W. Church as a witness. He testified, under the objection of plaintiffs, that the land was sold by James Calloway pretending to act under the power contained in the will. That the most of the children of Mildred Goforth were there themselves, or had some one there that represented them; Lucy Foster was not there, nor was Anthony Foster there. The older children said they would rather have the land sold and get what they were to have then. Dr. Calloway said that Lee Carmichael said consent was the end of the law, and he would sell the lands.

W. A. Fairchilds said he was there when the land was sold, and Levinia Foster bid off the land.

Defendant then introduced a deed from James Calloway, executor of Mildred Goforth, to Levinia Foster, dated 28th day of June, 1858, and a deed from Levinia Foster to defendant, dated October 6, 1871, for the land in controversy.

It was admitted by defendant that plaintiffs were entitled to recover the share of Lucy Foster, their mother, that being one-sixth; but defendant contended that they were not entitled to recover any more.

The Court held and instructed the jury that, upon the evidence, the plaintiffs were entitled to recover five-sixths of the land north-east of the creek. Defendant excepted.

Defendant further insisted that if the jury believed the evidence of Edmund Tilley and J. W. Church that the

land was exposed to sale by James Calloway as executor of Mildred Goforth, and in the presence of her children and grandchildren, they were estopped to set up their title, and plaintiffs could not recover their shares in this action.

His Honor declined so to charge, and defendant excepted.

There was a verdict for the plaintiffs, and judgment that they were entitled to recover five-sixths of that part of the home tract lying on the north-east side of Lewis' Fork Creek. Defendant excepted and appealed.

*Mr. D. M. Furches*, for plaintiffs.

*Mr. W. W. Barber*, for defendant (appellant).

AVERY, J.: Both plaintiffs and defendant claim through Mildred Goforth, who devised the land in controversy to Achilles Foster in trust for her daughters, Anna D. and Pheba Goforth, or to the survivor for life, with remainder to the issue of both or either, but on failure of such issue at the time of the death of the survivor of the two, to her *"own lawful heirs."*

Mildred Goforth left surviving her eight children, viz.: Anna D., who died without issue in 1886, and Pheba, who died without issue in 1887, and six others who married and are now living or have left children who are still surviving, viz.: John Goforth, William Goforth, Mildred, who married Edmund Tilley; Delpha, who married Wyatt Rose; Lucy, who married Anthony Foster, and who was the mother of the plaintiffs, and Levinia, who married —— Foster.

James Calloway, the executor of Mildred Goforth, assuming that he had power under the will or as attorney for her heirs and devisees, sold and conveyed the land in dispute on the 28th of June, 1858, while Anna. D. and Pheba were living, to the said Levinia Foster, one of the daughters of

the testatrix. The defendant claims under a deed from Levinia Foster, dated October 6th, 1871. It was admitted on the trial that James Calloway had no power under the will to dispose of the land and no instrument was shown constituting him the agent of the heirs and devisees of Mildred Goforth, or any of them, for that purpose. So, if we concede that the deed of Levinia to the defendant precluded her or her heirs, if she is now dead, from setting up any claim to the interest which vested subsequent to the date of her deed or the death of Pheba, in 1887, in the "lawful heirs" of Mildred Goforth, the title to one undivided sixth only of the land in controversy was shown to be in the plaintiffs, while the other four undivided sixths are vested in John Goforth, William Goforth, Mildred Tilley and Delpha Rose, or their heirs, one-sixth in each.

The plaintiffs have not excepted, but seem to have conceded that the defendant, as the grantee of Levinia Foster, is a tenant in common with the other heirs of Mildred Goforth, holding her undivided sixth interest.

Though the rule has been repudiated in many of the States, it seems to be settled in North Carolina that, in actions for the possession of land, where a plaintiff proves his title to an undivided interest, he can have judgment for the whole if he has shown "on the trial that the same evidence of title or possession that established his own right demonstrated the fact that others than the defendant held as co-tenants the other undivided interest and that the action enured to their benefit." *Allen* v. *Sallinger*, 103 N. C., 18; Sedgwick & Waite, sec. 300. The rule is stated by Sedgwick & Waite as follows: "Each co-tenant can pursue his remedies independent of the others and may maintain ejectment or trespass to try title alone, and in many States may recover the entire premises and estate from trespassers, strangers, wrong-doers and all persons.

other than his co-tenants and those claiming under them.
When his right is recognized he recovers for all. This
principle has been expressly recognized in Oregon,
Nebraska, Nevada, North Carolina, etc. * * * But the rule
has been repudiated in Massachusetts, Pennsylvania and
Missouri."

Where, in the old declaration in ejectment, the demise
was laid from one of several tenants in common, the plain-
tiff could recover his term in the undivided share of that
particular tenant (*Godfrey* v. *Cartwright*, 4 Dev., 487;
*Holdfast* v. *Shephard*, 6 Ired., 361), and on the joint demise
of two or more lessors, who are tenants in common with
another or others, a recovery might be had to the extent of
their combined interests, unless there was joined with them
in the demise a person not shown to have such common
interest with them. *Bronson* v. *Paynter*, 4 Dev. & Bat.,
393; *Hoyle* v. *Stowe*, 2 Dev., 318. Where in such cases a
general verdict of guilty was returned, the plaintiff was
entitled to judgment that he recover his term, as under
the writ of possession the lessor of the plaintiff proceeded
at his peril. *Holdfast* v. *Shephard, supra.* But as was said
by DANIEL, J., in *Godfrey* v. *Cartwright, supra,* "the more
correct way of proceeding is for the jury to find the defend-
ant guilty of the trespass and ejectment in the undivided
portion of the land described in the declaration to which
the lessor proves title on the trial, and then the judgment
shall be rendered accordingly," viz., that the plaintiff be
let into possession of or as to his undivided interest. In
*Lenoir* v. *South,* 10 Ired., 237, Chief Justice RUFFIN, in
speaking of the propriety of returning specific findings as
to boundaries or extent of interest, said: "The jury may
indeed give a general verdict and it is usual to do so, but
when the precise interest of the lessor or lessors of the

plaintiff appears, it is generally proper and most for the convenience that the verdict should be according to it."

But, when the fictitious action was abolished and that for possession was substituted for it, it became all-important if title was put in issue, as it generally was, that the plaintiff's judgment should be limited to his actual boundary or to his specific interest, because it was no longer a contest between nominal but real parties, and the decree was conclusive both as to territorial limits and the nature of the seizin. *Withrow* v. *Biggerstaff*, 82 N. C., 82; *Allen* v. *Sallinger, supra; Gilchrist* v. *Middleton*, 107 N. C., 663.

In *Gilchrist* v. *Middleton, supra,* the Court said: "One tenant in common of land may sue alone and recover the entire interest in the common property against another claiming adversely to his co-tenants as well as to himself, though he actually prove title to only an undivided interest. This he is allowed to do in order to protect the rights of his co-tenants against trespassers and disseizors. But where it appears from the proof offered to show title, or is admitted, as in this case, that a defendant who has confessed ouster by denying plaintiff's title is in reality a tenant in common with the latter, it is the duty of the Court to instruct the jury, by a specific finding, to ascertain and determine the undivided interest of the plaintiff. This obviates the danger of concluding the defendant by a general finding that the plaintiff is the owner." It thus appears "how one tenant in common may sue a trespasser who is infringing upon the rights of himself and his co-tenants and recover the entire land, or sue his co-tenant, who simply refuses to recognize his right in his answer, and recover such interest only as he may establish title for."

The rule which we have been discussing is one peculiarly applicable to actions for the possession of land, being that which obtained in the trial of actions of ejectment modified

so far as to accommodate it to the new remedy substituted for the old fictitious suit.

"The exception to the general rule that all persons interested in and to be affected must be made parties on the one side or the other obtained in courts of equity, where they were very numerous or it was impracticable to bring them all before the Court." Story Eq. Pl., sec. 122; *Bronson* v. *Insurance Co.*, 85 N. C., 411. Section 185 of *The Code* re-affirms this principle and enlarges its operation by allowing one to sue for all others, both where the parties are very numerous and where they have common interests, in all actions without regard to their nature. *Bronson* v. *Insurance Co., supra;* Pom. Rem., section 391; *Thames* v. *Jones*, 97 N. C., 121; *Glenn* v. *Bank*, 72 N. C., 626. But where one rests his right to sue alone in behalf of himself and others on the ground that the parties in interest are so numerous that it is impracticable to bring them before the Court, he must so allege. *Thames* v. *Jones, supra; McMillan* v. *Reeves*, 102 N. C., 550; Clark's Code, p. 98. It is obvious, therefore, that one of several co-tenants, when he brings an action against a trespasser on the common property and proves the title of the other tenants in establishing his own, may, under the common law practice in ejectment applied to actions for the possession of land, recover the whole though he claim sole seizin in his complaint in himself, just as he can do under the procedure prescribed in *The Code* by alleging that the action is brought in behalf of himself and others having a common interest, though it has never been determined in this State how far, if at all, in the action under the provisions of the statute, the co-tenants, not actual parties, would be concluded by the judgment. *Thames* v. *Jones, supra;* Pomeroy Rem., 391. The statutory remedy not being exclusive, the plaintiffs were at liberty after claiming sole seizin to insist upon

recovering the whole, if they showed title in themselves and co-tenants against a tort feasor in possession.

If, therefore, the deed of Levinia Foster, executed in 1871, when in contemplation of law it was possible that both Anna and Pheba Goforth might still have issue, operated upon the death of the survivor of the two in 1887 to pass the one undivided sixth, that would then have vested in her, to the defendant as her grantee, then the defendant is a tenant in common, and the Court should have instructed the jury to find that the plaintiffs were the owners of one undivided sixth, and should have given judgment that they be let into possession according to their interests. Levinia Foster executed the deed in 1871 to a contingent interest which could vest in her only, in case both Anna and Pheba should die without issue, and she should survive them.

Blackstone (Vol. II, p. 290) lays down the rule as follows; "Reversions and vested remainders may be granted, because the possession of the particular tenant is the possession of him in reversion or remainder; but *contingencies* and mere *possibilities*, though they may be released or devised by will or may pass to the heir or executor, yet cannot (it hath been said) be assigned to a stranger, unless coupled with some interest." The ancient policy, which prohibited the sale of a pretended title and adjudged the act to be an unlawful maintenance, it was well said by Chancellor Kent, has outlived the reason upon which it was founded in a state of society very different from that now existing in any part of the United States or the British Dominion. 2 Kent, 447. The limitation is similar to that discussed in *Watson* v. *Smith*, the only difference being that the persons who were to take the contingent interest, on failure of issue of J. W. B. Watson at his death, were in that case designated by name, whereas in our case the contingent interest was to vest in "the lawful heirs" of the devisor, whoever they may be, upon

the death of the survivor of the two daughters and failure of issue of both. In some of the States there are statutes expressly providing that such expectancies can be conveyed by deed, but in the absence of such legislation we would be led into a discussion of questions as to which there is some conflict of opinion, if our decision hinged upon the inquiry whether Levinia Foster had the power in 1871 to convey or only to make an assignment of her interest for a valuable consideration, which, as a contract to convey, she would be compelled by a court of equity to perform specifically on the happening of the contingency, when her estate should vest, or whether she was prohibited by public policy on account of the uncertainty of the persons who would fall under the description of lawful heirs, on failure of issue of Anna and Pheba at the death of the survivor, from transferring her interest either in law or equity. Washburn Real Prop., pp. 737, 776, 777; *McDonald* v. *McDonald*, 5 Jones' Eq., 211; *Mastin* v. *Marlow*, 65 N. C., 695; 20 Am. and Eng. Enc., pp. 968, 969, notes; 1 Am. and Eng. Enc., p. 830; Shep. Touch., 238; 6 Cruise Dig., 27n. If the deed were upheld only as an equitable assignment and the defendant wished to rest her defence upon the ground that it passed the equitable interest of Levinia Foster to her, it would be essential that she should set forth and plead specifically her equity. *Geer* v. *Geer*, 109 N. C., 679.

But in order to obviate the necessity of discussing these intricate and interesting questions, this Court, in the exercise of its discretionary power, has ordered to be certified a copy of the deed from Levinia Foster to Siddia Hackett, from which it appears that the grantor covenanted therein for herself and her heirs to forever warrant and defend the title to the lands conveyed to the said Siddia Hackett against the claims of all persons whatsoever. The deed

with warranty certainly took effect upon the death of Pheba, in 1887, so as to pass the title by way of estoppel to the defendant as the grantee of Levinia Foster to the one undivided sixth which then vested in her, as against Levinia Foster or her heirs, if she were then dead. It does not appear positively whether Levinia was living or dead when Pheba died in 1887, but the deed would estop her, or the warranty, her heirs. *Benick* v. *Bowman*, 3 Jones' Eq., 314; Sedgwick & Waite, *supra*, sec. 850; Tiedman Real Prop., sec. 727; 6 Lawson R. & R., sec. 2701.

The defendant, being the owner of the undivided sixth interest that vested on the death of Pheba in Levinia Foster, or her children and heirs at law, was a tenant in common with the plaintiffs, and not a trespasser. The Court below erred, therefore, in instructing the jury to find that the plaintiffs were the owners and entitled to the possession of five undivided sixths of the 'land lying north-east of the creek. The response to the issue should have been that plaintiffs were the owners of one undivided sixth, and judgment should have been rendered that they be let into possession with defendant according to their interest.

For the error mentioned a new trial must be granted.

Whether the defendant can offer any testimony on the next trial that should be submitted to the jury as tending to show an estoppel *in pais*, remains to be seen.

New Trial.