*321
 
 Ruffin, Judge.
 

 The declaration contains but one count, which is on the joint demise of seven, of whom •’
 
 Jhulrew Umjle
 
 and
 
 Elizabeth,
 
 the daughter of the testator, are two. It is for the whole tract of land, of which the testator died seised ; and there is a general verdict for the Plaintiff. The Court below held, that it was unnecessary to decide, whether
 
 Elizabeth
 
 had title or not under her father’s will, as it would be sufficient to enable the Plaintiff to recover, if the other lessors or any of them had the title. The case sets out the title, and none is attempted to be shown in
 
 Hoyle.
 

 If
 
 Elizabeth
 
 had title, this defect of it in
 
 Hoyle
 
 would render the judgment below erroneous. It is a universal rale, that the title must be truly stated in the declaration. A joint demise therefore can only be supported by showing a title in each to demise the whole. If one of the lessors lias no title, the Plaintiff must fail. This is well settled in England. I need not cite the cases, as it is common learning, am! they are collected in ali the text vM'iters. The rule has never been departed from in this State. The case of
 
 Doe ex dem. of Nixon
 
 v.
 
 Potts,
 
 (1
 
 Hawks
 
 469,) has been relied on to the contrary. If that case lias been so regarded, it is entirely misunderstood. It is the other way. There, a joint demise by tenants in common was sustained, contrary to the rule in England, which is, that as their title is several, their demises must also be several. The doctrine of
 
 Doe ex dem. of Nixon
 
 v.
 
 Potts
 
 is, that their demise may be joint; because although they cannot jointly convey the land, they may jointly demise for years, since a demise for years is but a contract for possession, and their possession is joint. The position therefore is not that the title of the Plaintiff' need not be truly stated in pleading, but that in cases of tenants in common, their lessee’s title is truly stated, when it is alleged to be on the joint demise of the lessors. The reason of that case directly applies to the.
 
 present;
 
 for there is neither a joint right to con
 
 *322
 
 vey j|)0 rior a joint right to possess it, or to let the possession, shown, when one of the lessors has no title, ■.^y^ W0l,](] t,e t|ie G[lfeot of it ? The verdict cannot se-parale (he title alleged by the Plaintiff, and say he has right under part of his lessors, against his own statement of the title ; and then, upon this verdict, not only the true owner gets a writ of possession, but one is also let in, vs ho has no manner of right. It therefore was essential to determine
 
 Eliaabeth’s
 
 title; because if she had none, this count must, fail. And whether she has or not, it cannot be supported, because no title is shown in
 
 Hoyle,
 
 another of the lessors. This would dispose of the case before us, and compel us to reverse the judgment. But as the case has been pending a considerable time, and the parties are anxious to have the construction of the will settled, the Court will dispose of the other questions made.
 

 The case states, that the testator’s widow and executrix cultivated parts of the plantation for several years, and then married again ; and that she and her second husband then let the whole tract to the Defendant, who entered and is now in possession under them. All the lessors of the Plaintiff, except
 
 Hoyle,
 
 are the heirs and children of the testator, mentioned in the will. The will is set out at large, and makes a part of the case.
 

 The first inquiry presented is, 'whether
 
 Elizabeth
 
 is entitled to any share of the land. The testator bequeaths to her a slave, and other small things, and then declares that with a negro which her grandfather had given her, and the property then given by the testator “ she must be contented, without claiming or receiving any further dividend out of bis estate.5’ By the clause immediately preceding, be directs that his wife shall have her main tenance out of his land, during her natural life or widowhood. And in the last clause, he gives a further explanation of the devise of the land to his wife, and makes u disposition of it. The words are. • <5 T will that my wife
 
 *323
 
 •shall have such a part of my land, as she with her children and negroes left to her care, can attend under crop .i , , , annually, during her lire or widowhood; ami the balance, of cleared land, I will shall be- rented out annually by my executors, until my children come of age to take it in their own possession.” It is argued, that there is no express devise of the land to the other children, and therefore that it descended to all, as heirs, including
 
 Elizabeth ;
 
 and the clause excluding her is void, because the heir cannot he shut out by hare words of exclusion. It is true, that where land is devised to the heir at law, in the same estate which he would take as heir, the devise is inoperative, and the licit* takes by descent, as the better title. But. that does not apply to a question of intention in a will, as to which of the heirs a part or all of the land símil go. It only determines the nature of the estate, and not the extent of the acquisition. It is equally true, that the mere exclusion of the heir by the words of the will, however express and direct, will not be efficacious to destroy his succession. There must be a disposition to some other person capable of taking; because in the very nature of inheritances, the heir takes whatever is not given away. Manifestly however, this rule can only apply, where there is a single heir, lie cannot be barred by words of exclusion barely; because if he takes not, there is nobody else who can. When there is a class of heirs, the exclusion of one leaves others who may take. The necessity which imposes the estate on a single heir — for the want of another owner — ceases when there are more heirs. Whether these wmrds operate simply to exclude him, aud leave the land to descend to the others; or operate by implication, as a disposition to the others, is an inquiry'more nice than useful. I suppose the latter ; like the case, in the books, of a devise to the heir after the death of the testator’s widow ; which is held to give a life estate to the latter. Be it the one way or the other, the exclusion is effectual:
 
 *324
 
 because the estate is not left without an owner- This is ^,e doctrine touching the succession of the next of kin to personalty. The same reason extends it to our partible inheritances; for although an heir is favored, yet he may be shut out by a reasonable implication, short of a necessary one. If therefore this case stood singly on the words of exclusion, the opinion of the Court would be adverse to
 
 Elizabeth.
 
 But this conclusion is here aided by other parts of the will. The testator had not forgotten his land. Nor did he mean to die intestate as to it. He mentions it twice in connexion with bis
 
 wife;
 
 and in the last clause, directs it to be leased until his children come of age
 
 to take it.
 
 There is a disposition then to the children. The only difficulty is, what children ? It is purely a question of intention. And in that point of view, the case is plain enough. The testator must mean, those children not before excluded. This goes throughout the will; for when he orders certain negroes to be hired out, and the proceeds, after answering certain contingencies, to be divided amongst his children, he adds “ paying due respect to the foregoing reservation.” What reservation ? There is none, but that which says
 
 Elizabeth
 
 shall have nothing more, and that the children should have it only at certain ages. We are bound to read this will, so as to make all the parts consistent, if we can. This is effected by construing
 
 “
 
 my children,” in the devise of the land, “ the rest of my children, Eli
 
 zabeth
 
 excepted.” For why is she expressly excluded in one clause, if the testator meant to take her in by a general subsequent description ? We are obliged too, to extend the exclusion to the land, because the testator could have used no larger word than he has — “ estate”— and there is nothing in the context to control it.
 

 The remaining question is, whether the executors have authority to lease those parts of the land, which were occupied by the widow. The Court has heretofore decided,
 
 (ante
 
 1
 
 vol. p.
 
 348) that each child is entitled tc
 
 *325
 
 Ws or her share, at their arrival at the ages specified— the girls at eighteen, and the boys at twenty-one years. No lease of the executors can interfere with that provision. Subject to that, the authority is with the executors. It is expressly given as to the “ balance of the land” not occupied by her. We should agree with the Judge below on this point, if, in our opinion, it depended upon the nature of the estate, taken by the children. That is unquestionably a fee in the whole tract, subject to the occupation of the widow, and we think, also subject to a power of leasing for the benefit of the children by the 'executors, instead of a guardian. The widow is not restricted to the cultivation of any particular parts of the land but is at liberty to occupy any parts she may select, and as much as she may choose from year to year, according to the increase of her hands. Is the first or last year’s occupation to determine that part, which is called the balance ? But suppose her confined to half, or that she actually worked but half, and then married. Is there any reason, why different parts of this small estate, and that undivided, should be under the management of different curators, when the profits in each case are to belong to the same persons? We cannot think the testator so intended — especially, when it is seen, that the negroes and other legacies, given to the same children, arc to remain with the executors until their ages of eighteen and twenty-one. The words too are, that the balance of the land is to be rented out, until the children shall come of age to take it into
 
 their own possession ;
 
 which certainly refers to the periods before specified, and negatives the idea, that the executors were not to manage the whole property. “ The balance” then we take to mean, whatever parts o| the land were not occupied by the widow, without reference to the particular reason for that — whether it was, that she did not need it, or could not work it, or by death or marriage, ceased to be entitled to it.
 

 Per Curiam. Judgment reversed, and new trial granted.