SOLOMON OVERCASH v. DAVID KITCHIE.

*Ejectment—Issues—Judge's Charge—Comments of Counsel—
Tenants in Common.*

1. In ejectment, the court submitted an issue to the jury under which the location of a disputed line could be found by them, but refused to submit one proposed by defendant, as to whether the plaintiff agreed to the running and marking the line by a surveyor, and that defendant might take possession under said agreement; *Held,* no error, as the same was not material to the case or raised by the pleadings.

2. The comments of counsel in this case are not of such a character as will warrant a new trial; the rule, as heretofore laid down, announced and approved.

3. A judge, in granting a prayer for instructions, may add any explanation of the law bearing upon the facts embraced in the instructions.

4. One of several tenants in common may sue in ejectment and claim the entire estate, and, upon a recovery, will have judgment for such share in common as he shows himself entitled to. But, here, there are no facts to support the instruction asked by defendant in reference to the alleged tenancy in common.

5. Where there is evidence of a variation of the compass in running a disputed line, and the court submitted it to the jury in connection with the other testimony as to its proper location; *Held,* no error.

(*Mitchell* v. *Brown,* 88 N. C., 156; *Bronson* v. *Paynter,* 4 Dev. & Bat., 393; *Holdfast* v. *Shepard,* 6 Ired., 361; *Camp* v. *Homesley,* 11 Ired., 211; cited and approved).

EJECTMENT tried at Spring Term, 1882, of IREDELL Superior Court, before *Eure, J.*

The following issues were submitted to the jury:

1. Is the plaintiff the sole owner and entitled to the possession of the land described in the complaint?

2. Does the dividing line between the plaintiff and defendant run from the pine designated in the plat to the red oak? If not, to what point does it run?

3. Is the defendant in the wrongful possession of any part of the land?

4. What damages is plaintiff entitled to?

1. During the trial the defendant introduced evidence tending to show that the plaintiff had at one time agreed to allow one Campbell (county surveyor) to run and mark the line of the disputed territory and to abide by the result; and that Campbell, not acting, however, as a regular processioner, had run the line according to defendant's claim. The evidence of the plaintiff controverted the fact in reference to said agreement, and showed that the dispute about the line had been settled by arbitrators in his favor.

The defendant contended that the said alleged agreement of plaintiff to abide by the line as run by Campbell was an estoppel *in pais* against plaintiff, and asked the court to submit the following issue: "Did plaintiff agree that the processioner might run and mark the line from the pine south to the stake, and defendant take possession of the land in dispute under said agreement?" His Honor said that the jury could consider all these controverted matters of evidence in regard to what occurred between the parties—both the alleged survey which defendant never offered to show was a processioning under the act of assembly, and the award offered by plaintiff—in making up their verdict on the issue as to where the true line was, and declined to submit the issue. The defendant excepted.

2. The plaintiff's counsel argued to the jury that the whole controversy depended upon the finding of the second issue, "and that the argument on the other side upon the issue of sole ownership was a departure from the evidence and calculated to mislead the jury, and, so far as the facts were concerned, was dodging the main issue."

"The defendant's counsel interrupted, as he had done several times before in relation to other matters, and said that plaintiff's counsel had at a former term submitted an issue as to sole ownership."

"The plaintiff's counsel then expressed the desire not to be further interrupted, and then the defendant's counsel presented

to the court issues tendered by plaintiff at fall term, 1880, as follows:

1. Is plaintiff entitled to the *locus in quo*, in dispute in this action, in possession, title and ownership?

2. If plaintiff is so entitled to recover as above stated, how much damage has he sustained? and remarked to the court that they (plaintiff's counsel) themselves submitted an issue as to sole ownership. No request was made of His Honor, nor was anything further said by defendant's counsel." "It did not appear that these issues were ever settled as the issues in the case: they were not referred to in settling the issues on the trial, and were never accepted by the defendant, as the issues, at the time they were filed." "The defendant excepted."

3. The instructions prayed by the defendant in reference to *termini* and calls in a deed, were based upon the rulings in *Clark* v. *Waggoner*, 70 N. C., 706, and *Safret* v. *Hartman*, 7 Jones, 199, cited in the statement of the case, and His Honor in giving them "explained their meaning to the jury, and referred to the evidence touching the location of the disputed corner, saying that the corner claimed by plaintiff was described by several witnesses, as having a body resembling a black oak and leaves resembling those of a red oak; and that defendant had introduced evidence tending to locate the corner at the stake," and that the jury must consider all the testimony bearing on the question of location, and say where the corner was. Defendant excepted.

The facts upon which the other exceptions are grounded are sufficiently stated in the opinion of this court.

Verdict and judgment for plaintiff; appeal by defendant.

*Messrs. Robbins & Long*, for plaintiff.
*Mr. D. M. Furches*, for defendant.

MERRIMON, J. We have examined the several exceptions of the defendant and are of opinion that no one of them can be sustained.

1. The defendant introduced testimony tending to show that the plaintiff at one time before the bringing of the action agreed to allow the county surveyor, not, however, acting as a regular processioner, to run and mark the line in question along the disputed part thereof. The plaintiff introduced testimony tending to show the contrary, and, further, that this line as claimed by him had been settled in his favor by award.

The counsel for the defendant asked the court to submit the following issue: "Did the plaintiff agree that the processioner might run and mark the line from the pine south to the stake, and defendant take possession of the lands in dispute under such agreement?"

The court declined to submit the issue to the jury, saying that all these controverted matters of evidence in regard to what had occurred between the parties, both as to the alleged survey which the defendant had not offered to show was a processioning under the act of assembly, as also the award offered by the plaintiff, could be considered by the jury in making up their verdict upon the issue as to where the true line was, and he did not deem it rightful to submit the issue proposed any more than an issue as to the alleged award. The defendant excepted to the denial of his motion and to the issues submitted.

The complaint alleges in substance that the plaintiff is the owner of and entitled to the possession of the land specified therein; that the defendant is in the unlawful possession thereof, and unlawfully withholds the same; and demands judgment for possession of the land, for damages and for costs. The answer denies the allegations of the complaint. These are the material allegations on the part of the plaintiff and denied on the part of the defendant. All else in the complaint and answer is immaterial, redundant matter in the pleadings; much of it is made of evidential facts that might be put in evidence on the trial—indeed, some of them were.

Now, the issues raised by the pleadings are manifest to the legal eye. Those submitted to the jury embody the substance of

them. The second one might have been dispensed with; the facts involved in it might have been given in evidence upon the first one. The general fact, and the facts in detail involved in the issue presented by the defendant, was competent, and might have been introduced as evidence to lead the jury to find the issues submitted in favor of the defendant. The issue proposed was not raised by the pleadings, nor was it material as one issue.

It was for the court to determine what issues must be submitted. The plaintiff and the defendant, or both, may prepare issues to be submitted; the court may accept or reject them, and must submit such and only such as are raised by the pleadings. *Miller* v. *Miller,* decided at this term, *ante,* 209; *Mitchell* v. *Brown,* 88 N. C., 156. The first exception is, therefore, groundless, and must be overruled.

2. The counsel for the plaintiff had the right to insist upon the pertinency and importance of one issue over another, just as the defendant's counsel had the right to insist upon the contrary, and we cannot see that he transcended the bounds of propriety in what he said, especially, as he was interrupted repeatedly by the counsel for the defendant, who brought matter, not in evidence, to the attention of the court, in the presence of the jury, tending to show that the counsel for the plaintiff had changed his views as to the issues and their materiality.

Freedom and earnestness of debate as to the questions raised, and within the compass of the evidence, must be allowed, and it rests very largely with the presiding judge to regulate and determine its manner, temper and fairness. If counsel should grossly transcend the bounds of propriety in the course of his argument upon the facts to the jury, and to the manifest injury of the party against whom he was appearing, and the court would not check him, as it ought at once to do, or would not properly caution the jury, this might be assigned as error in the conduct of the trial, such as this court could correct upon appeal, by directing a new trial.

But the exception under consideration presents no such case;

indeed, we see nothing in the substance of what was said, of which the defendant can complain. There was the ordinary earnest contest of counsel. The language, "dodging the main issue," was scarcely graceful or courteous in debate, but this did not affect the substance of the discussion adversely to the defendant. Jurors are, for the most part, plain, honest men, and generally regard with favor fair and manly discussion. Justice and fairness command the respect of good men everywhere, and in the jury box as well. The second exception of the defendant must be overruled.

3. The third exception has no foundation upon which to rest. The court gave the jury the special charge prayed for, and the explanations he gave as to the contentions about the disputed corner, and the conflicting testimony in relation thereto, were eminently proper. The court was not bound to give the special charge asked for and say no more—in this case he ought to have added the explanations given and called the attention of the jury to such of the testimony as bore upon the matter embraced by the charge. As appears from the record, what the court said was fair to both the plaintiff and the defendant. The exception is general, and no special ground of complaint is assigned.

4. The facts relied upon to raise the fourth exception are these: In 1834, Neil Brawley devised to his grandsons, John L., James A. and Robert M. Brawley, the tract of land known as the "Anderson tract." James and Robert afterwards died without issue, leaving as their only heirs-at-law the said John L., his brothers William and Singleton Brawley, and their sister Julia, wife of Levi Vanderburg. Afterwards, said William died, without issue, leaving his said surviving brothers and sister his only heirs-at-law. Afterwards the said Singleton died leaving issue, infants, his only heirs-at-law, and one J. W. Brawley was duly appointed their guardian.

The tract of land claimed by the plaintiff in the complaint, and that claimed by the defendant, were *carved* out of the said "Anderson tract." The plaintiff derived title to his, by deed

executed in 1873 to him, by the said John L. Brawley and his wife, and Julia Vanderburg and her said husband, and J. W. Brawley, as guardian of the infant children and heirs-at-law of the said Singleton. It does not appear that the said guardian had any proper authority to convey the interest of his said wards in the land.

The defendant derives title in this way: The said John L. Brawley executed sometime in 1858 to the said Levi Vanderburg a deed in trust, with power of sale, of the aforesaid "Anderson tract" (in terms). The respective deeds to plaintiff and defendant do not cover the same land at all; but the calls in the one correspond with the calls in the other as. *adjoining* tracts, and each purports to be a *part only* of the aforesaid "Anderson tract," with the respective contents in each specified. There was no evidence produced, except the deeds, to show an actual partition of said "Anderson tract" among the parties interested at any time. The land in dispute was woodland until a short time before this action was brought.

The defendant prayed the court to charge the jury, that if the plaintiff and defendant and others were tenants in common (as he insisted they were) of the land claimed by the plaintiff, then he could not recover in this action, and that the burden was on the plaintiff to show a complete title in himself. The court gave the instruction, and added, "that the deeds under which the respective parties claimed called for distinct parcels of land, except that the question remained as to where the true line between them was, and this was for the jury to determine." The defendant excepted.

The facts as to whether the whole, or what particular part of the "Anderson tract" was embraced by the deed executed by John L. Brawley to Levi Vanderburg in 1858, are vague and indistinct. The deed could only operate to pass his interest in the part he undertook to convey, and it appears to us that he only sold his interest in the tract carved out of the "Anderson tract," claimed by the defendant. The deeds are not sent up with the case, and we must take the facts as stated in the record.

If the deed of 1858 was intended to convey and did convey John L. Brawley's interest in the whole of the "Anderson tract," the defendant ought to have made this appear. It appears that two tracts, one claimed by the plaintiff and the other claimed by the defendant, were carved out of that tract: it was cut into at least two tracts, perhaps more. When this was done does not appear; and in 1873, John L. Brawley joined in a conveyance to the plaintiff. This is inconsistent with the view that he conveyed his interest in the whole tract in 1858. It is probable he did not. It was competent to cut the tract into sundry tracts, and that he should convey his interest in one of them; and it appears to us that he did convey his interest in the tract of the defendant. This is the only reasonable solution of the matter, taking the facts as they appear in the record.

Then, the defendant had no interest in the land claimed by the plaintiff in his complaint, neither as tenant in common, nor otherwise.

It is said, however, that the infant heirs of Singleton Brawley are tenants in common with the plaintiff, because the deed of their guardian could not pass their title to him, in the absence of a judicial decree authorizing the sale, and that the plaintiff can not sue alone. This is a misapprehension of the law. One tenant in common may sue in many cases without joining his co-tenant. Each has a separate and distinct freehold, and he may sue to recover possession when he has been disseized. There are cases in which they must sue jointly, as where they make a joint demise of their common estate, reserving rent; in such case the action to recover must be joint. If, however, one of the several tenants in common bring an action to recover the possession of land of which he has been disseized, and claim the entire estate instead of his proper undivided share, he will not be nonsuited, but will have judgment for such share in common as he shows himself entitled to. And it has been held, that one of two joint tenants may recover the entire estate in an action of ejectment against one who has no title. *Bronson* v. *Paynter*,

4 Dev. & Bat., 393; *Holdfast* v. *Shepard*, 6 Ired., 361; *Camp* v. *Homesley*, 11 Ired., 211; *Robinson* v. *Johnson*, 36 Vt., 74; *Chandler* v. *Spear*, 22 Vt., 388; Wash. on Real Property, 572. There is, therefore, no ground for the fourth exception, and the court might have told the jury that there were no such facts in the case as warranted the prayer.

5. There was some evidence of a variation of the compass, and the court properly left it to the jury, in connection with all the other evidence in the case, to aid them in reaching a conclusion as to the proper location of the boundary line. The judge was careful not to give this evidence any undue weight, but threw it into the scale for what it was worth, and fairly left it to the jury to determine that in connection with all the other evidence before them. This exception cannot be allowed.

6. As to the sixth exception, the court gave the instruction prayed for, and told the jury "it was their duty to consider it as bearing upon the facts in this case." The court then properly directed the attention of the jury to such parts of the evidence as bore upon the matter embraced in the special charge. This the court ought to do ordinarily, and it was proper in this case. We can perceive not the slightest unfairness, or bias, in the explanations and directions given by the court. It is a mistake to suppose that the court must give the charge just as asked for; he may do so; he may modify it; he may give the substance of it; explaining and applying the law and the evidence, always leaving it to the jury to weigh the testimony in connection with the law as explained and applied by the court. If the court erred, then the error ought to be specified intelligibly. There is no ground upon which the exception rests.

There is no error. Judgment affirmed. Let this be certified.

No error.                                    Affirmed.