LOCKLEAR v. BULLARD.

(Filed November 3, 1903.)

1. PLEADINGS—*Ejectment—Allegata et Probata—Deeds—Mortgage—Fraud—Mistake—Ejectment.*

   A defendant in an action for the recovery of real property cannot show that a deed in the chain of his adversary's title, absolute in form, was a mere mortgage, unless he expressly pleads it.

2. LIMITATIONS OF ACTIONS—*Adverse Possession—Tenancy in Common—Ejectment—The Code, sec. 166.*

   An action for the recovery of real property, instituted against a tenant in common in adverse possession, suspends the running of the statute of limitations as to the co-tenant then out of possession.

ACTION by J. Locklear against Elias Bullard and others, heard by Judge *O. H. Allen* and a jury, at September Term, 1902, of the Superior Court of ROBESON County. From a judgment for the plaintiff the defendants appealed.

*John D. Shaw, Jr.*, and *A. W. McLean*, for the plaintiff. *McIntyre & Lawrence*, for the defendants.

WALKER, J.    This is an action for the recovery of real property.    The plaintiff in his complaint alleges that he is the owner of the land, that the defendants are in possession thereof and unlawfully and wrongfully withhold the pos-

session of the same from him. The defendants simply denied these allegations, no special defense of any kind being pleaded.

The plaintiff, who claims title in three different ways, in order to establish his title to the land, introduced the following documentary evidence: 1. A grant from the State to Robert Locklear and a deed from the latter to Elizabeth Locklear. He then proved that he is the only child and heir at law of Elizabeth Locklear. 2. A deed from James Bullard, father of the defendants, to W. F. Buie, and a deed from W. F. Buie to the plaintiff. 3. The plaintiff then introduced evidence tending to prove that James Bullard and the defendants, who claim under him, entered upon the land, under the plaintiff, as tenants or permissive occupants, and he contended that they were, therefore, estopped to deny his title. 4. The plaintiff further introduced evidence which tended to prove that he and those under whom he claimed had been in the adverse possession of the land under color of title for more than twenty years prior to the commencement of this action. It was conceded that the title to the land was out of the State.

The defendants introduced evidence tending to show that the deed from James Bullard to W. F. Buie was in fact intended to be a mortgage, but by mistake was drawn and executed as an absolute deed. They admitted that the land west of Juniper swamp belonged to the plaintiff, but averred and introduced evidence to prove that the land lying on the east side of the swamp had been in the possession of themselves and those under whom they claimed for twenty years prior to the commencement of this action.

Plaintiff replied to the last contention of defendant by introducing the record of an action brought by him against Burdie Bullard, son of James Bullard, and brother of the defendant, Elias Bullard, on September 10, 1894, for the

recovery of the possession of the land now in controversy, in which action a judgment of non-suit was entered at September Term, 1899. He then proved that within one year after the non-suit was entered he commenced this action. At the trial there was a verdict for the plaintiff and judgment was entered thereon, from which the defendants appealed, alleging numerous errors as having been committed by the Court during the course of the trial.

In this Court the defendants abandoned, and we think properly, all but two of their exceptions, and these two related to the charge of the Court in regard to the alleged mortgage from Bullard to Buie and the effect of the evidence of the suit of the plaintiff against Burdie Bullard upon the adverse possession of the defendants as a bar to the plaintiff's recovery.

1. The defendants proposed to show that the deed from James Bullard to W. F. Buie, which was absolute in form, was intended to be a mortgage and was given to secure the repayment of money advanced by Buie to James Bullard. They were permitted by the Court to introduce testimony for this purpose, and upon the evidence as introduced, the Court charged the jury that before they could find that the deed was intended as a mortgage they must be satisfied by clear and convincing proof, not only that the parties intended it to be a mortgage, but that the clause of redemption was omitted by fraud or mistake. The defendants excepted to this charge. If there was any error in this instruction of the Court, the defendants are not in a position to complain of it. They had answered the complaint by a general denial of the allegation of the plaintiff, and have not specially pleaded the facts which would entitle them to an issue for the purpose of ascertaining whether the deed was intended as a mortgage and of having it corrected and converted from an absolute deed into a mortgage, if it was the purpose of

the parties that it should be merely a security for the money advanced by Buie to Bullard. An equity of this kind cannot be made available to the party who claims it, unless it is expressly pleaded. *Fisher v. Owens,* 132 N. C., 686; *Norris v. McLane,* 104 N. C., 159. In such cases it is an invariable rule that proof without allegation is as fatal as allegation without proof. There must be both allegation and proof to entitle the party to relief. *McLaurin v. Cronly,* 90 N. C., 50; *Young v. Greenlee,* 82 N. C., 346; *Helms v. Green,* 105 N. C., 251; 18 Am. St. Rep., 893; *McKee v. Lineberger,* 69 N. C., 217; *Abernathy v. Seagle,* 98 N. C., 553. A party cannot attack a deed in the chain of his adversary's title by evidence, without corresponding allegation, unless there was fraud in the factum or execution of the deed, or unless for some other reason the deed is open to collateral attack. *Helms v. Green, supra.* When, under the former system of procedure, a party would have been obliged to resort to a court of equity for relief, he must now set up the equity in his complaint or answer, as the nature of the case and his position on the record may require. *McLaurin v. Cronly, supra.*

2. It was conceded, so far as the next contention of the defendants is concerned, that if the time of the pendency of the suit of *Locklear v. Bullard* should be excluded from the count, the alleged adverse possession of the defendants and those under whom they claimed had not continued long enough to ripen their title and bar the plaintiff's recovery. We think the time of the pendency of that suit should be excluded from the count in ascertaining the length of the defendant's adverse possession, if there was any such adverse possession. Assuming that Burdie and Elias Bullard were tenants in common, the possession of Burdie Bullard was, in law, the possession of his co-tenant. *Tharp v. Holcomb,* 126 N. C., 365. It was only by virtue of the posses-

sion of Burdie Bullard that the defendant Elias Bullard can claim that adverse possession had ripened his title. The statute provides that if suit be commenced within the time prescribed therefor and the plaintiff be non-suited, he may bring a new action within one year from such non-suit. The Code, sec. 166. The reason of the law is that the running of the statute should, in the very nature of things, be arrested as soon as the party has asserted his right by action, and in this case it appears that the plaintiff sued him who was in possession and who represented the defendant Elias Bullard, and it would seem, therefore, that the operation of the adverse possession as a bar to the plaintiff's right or title could not have been more effectually prevented. The defendant, Elias Bullard, will not be permitted to say that the adverse possession of his brother enures to his benefit, and at the same time repudiate the burden that necessarily accompanies it or is a consequence of it. If he seeks to profit by the adverse possession he must also bear its burden, and anything that will interrupt or suspend the running of the statute as to his brother must be held to affect his right precisely to the same extent and in the same degree. This follows from the nature of the relation of the parties to each other. If Elias Bullard claims that Burdie Bullard did not represent him and stand for him while in possession, then he is met by the difficulty, which he cannot overcome, that he had no possession at all; so that in either view, whether Burdie Bullard represented him or not, he will lose. *Clymer v. Dawkins,* 3 How. (U. S.), 674.

We must hold that it was the assertion of the plaintiff's right to the possession in that action that stopped the running of the statute, for it was the possession that was building up the title for the defendants and gradually destroying that of the plaintiff, and when the plaintiff's inaction ceased by the assertion of his right to the possession, he should no

longer be held to have been injuriously affected by the continued possession of the defendants pending the suit. It seems to us that it would be strange indeed if this were not so. The adverse possession set the statute in motion, and we can conceive of no valid reason why an action to recover the possession should not suspend its operation.

It appears to have been settled by authority in this State that it can make no difference who was in possession at the time the first action was brought. It was the bringing of the action which was equivalent to entry and which stopped the running of the statute, without regard to who the particular occupant at the time may have been. In *Williams v. Councill*, 49 N. C., 211, this Court, through *Pearson, J.*, says: "We do not think that the defendant in the new action must be the same person as the defendant in the former action; for if so, the plaintiff might be deprived of the benefit of this saving, without any fault or laches on his part; the defendant in the first action would have nothing to do but give place to another tenant of the same landlord, or he might convey to a third person, or leave the premises vacant and let a third person enter, and thus force the plaintiff to bring a new action against a different defendant; and it would be absurd to suppose that the defendant in the second action might insist upon the possession of the defendant in the former action as a bar to the plaintiff's right of entry, although the latter, had he continued in possession, could not, by force of the proviso, have availed himself of his own possession."

This view of the statute is fully set forth, and with great clearness, by *Ruffin, C. J.*, in *Long v. Orrell*, 35 N. C., 130, where it is said by the Court: "If an action within the year would not lie against a stranger who entered when the possession was vacant, there would be the absurdity that he could insist on the possession of a former tenant as a bar,

which the former tenant himself could not set up, had he continued in possession. Such consequences forbid a construction which produces them; and they show the true principle of the enactment to be, that by bringing ejectment, a party then having the right of entry shall continue to have it as long as that action pends, and afterwards, also, if, within one year afterwards, he will bring another action, and so on, from time to time."

This principle, which seems to be thoroughly settled, applies with great force to a tenant in common out of possession, who is said to be represented by his co-tenant in possession, as his bailiff. *Jolly v. Bryan,* 86 N. C., 457. The possession of one tenant in common is the possession of the other. *Cloud v. Webb,* 14 N. C., 326; *Clymer v. Dawkins, supra.*

We find no error in the ruling of the Court below.

No error.