## ALLRED v. SMITH.

· (Filed May 17, 1904).

1. JUDGMENTS—*Estoppel—Tenancy in Common—Cancellation of Instruments—The Code, secs. 254, 255.*

> Where one tenant in common obtains judgment against a co-tenant for the cancellation of a deed, the co-tenant is not estopped to claim title under the deed as against other co-tenants not parties.

2. JUDGMENTS—*Tenancy in Common—The Code, sec. 185.*

> Parties claiming rights in property by virtue of a judgment should set up the entire record in the suit in which the judgment was rendered.

CLARK, C. J., dissenting.

ACTION by B. M. Allred and others against H. D. Smith and others, heard by *Judge B. F. Long,* at February Term, 1904, of the Superior Court of RANDOLPH County.

Nancy Allred was the owner of the land in controversy, all parties to the land claiming title under her. She died leaving the plaintiffs and defendants her heirs at law. Prior to her death she executed a deed for the land in controversy to the defendant G. D. Allred. The plaintiff Willie Allred, after the death of her mother, instituted an action in the Superior Court against the defendant G. D. Allred, alleging that at the time of the execution of said deed the said Nancy Allred did not have sufficient mental capacity to execute the same. That she did not assume to sue for or in behalf of any children, heirs at law of said Nancy Allred. At July Term, 1903, the cause came to trial, and upon an issue submitted to the jury it was found that the said Nancy Allred did not have sufficient mental capacity to execute the said deed, and it was "Ordered, adjudged and decreed that the

land described in the complaint, and which is recorded in Book 99, page 310, in the office of the Register of Deeds of Randolph County, and which purports to convey the land described therein from Nancy Allred to the defendant G. D. Allred, is void and of no effect; and it is further ordered, adjudged and decreed that the said deed be delivered up and cancelled of record; and it is further ordered that the Clerk of this Court certify a copy of this judgment to the Register of Deeds of Randolph County, to the end that the same may be registered in the office of the Register of Deeds for said county."

From this judgment no appeal was taken. The plaintiffs instituted this proceeding for partition, and alleged that they and the defendants are each entitled to one-ninth undivided interest of said land as heirs at law of Nancy Allred. The defendant G. D. Allred says that he is entitled to eight-ninths undivided interest in said land by virtue of the deed from Nancy Allred to himself. He admits that by virtue of the judgment in the case of Willie Allred against himself, she is entitled to one-ninth interest therein. The facts in regard to the execution of the deeds and a copy of the judgment are set out in the answer. The plaintiffs demurred to the answer, for that it appeared upon the face of the complaint that the said deed under which the defendant G. D. Allred claimed had been declared void and cancelled. The Clerk sustained the demurrer and directed a sale of the land for partition, to which judgment the defendant excepted and appealed to the Judge. Upon the said appeal the Judge of the district reversed the judgment of the Clerk and overruled the demurrer adjudging:

"Upon the record now before the Court the Court adjudges that Willie Allred and G. Dallas Allred are tenants in common in the lands described in the petition, the said Willie entitled to one-ninth and G. Dallas to eight-ninths, and the

judgment of the Clerk to this extent is reversed and modified."

From this judgment the plaintiffs, other than Willie Allred, appealed.

*Oscar L. Sapp,* for the plaintiffs.
*Robbins & Robbins* and *Hammer & Spence,* for the defendants.

CONNOR, J. The deed from Nancy Allred to the defendant G. D. Allred conveyed to him the title to the land in controversy. If she was *non compos* at the time of its execution, the deed was *voidable,* not *void.* "The deed of a person of unsound mind, not under guardianship, conveys the *seizin." Odom v. Riddick,* 104 N. C., 515, 17 Am. St. Rep., 686, 7 L. R. A., 118. At her death no estate passed to her heirs at law. They had a right of action and were entitled either jointly or severally, to attack the deed in so far as it affected their rights. Only one of them did so. It is alleged, and the demurrer admits, that she "did not assume to sue for or in behalf of any of the other children." As the basis of her right to sue she alleged that she was an heir of Nancy Allred. This was admitted. The only issue submitted to the jury was directed to the mental capacity of the grantor. The facts appearing upon the pleadings before us are that Nancy executed the deed; that Willie brought the action to set it aside, so that she might inherit her share of the land conveyed; that she prosecuted her action successfully and has the fruits of her victory—one-ninth undivided interest in the land. The brothers and sisters seek to avail themselves of the verdict and judgment in that case to vest title in themselves and to estop the defendant G. D. Allred from claiming any right to or title in the land under the deed. They are not parties to the action. The defend-

ant does not seek to use the judgment as an estoppel or to attack it. He concedes that, as against the plaintiff Willie in respect to her one-ninth, he is estopped. She claims no more, the parties to the action are content to abide its result. When the other plaintiffs, strangers to the action and, as we shall see, not privies, seek to take title under the judgment, or to estop him from denying that they have title, he simply relies upon the well-established principle that "Estoppels must be mutual and bind only parties and privies. One who is not bound by an estoppel cannot take advantage of it." For this position he relies upon the numerous decisions of this Court and the uniform current of authority from the time of Coke to this day. *Pearson, C. J.,* in *Griffin v. Richardson,* 33 N. C., 439, so declares the law. Also in *Falls v. Gamble,* 66 N. C., 455; *Ray v. Gardner,* 82 N. C., 146, *Bryan v. Malloy,* 90 N. C., 508. In *Peebles v. Pate,* 90 N. C., 348, it is said: "Every estoppel must be reciprocal, it must bind both parties; a stranger can neither take advantage of it or be bound by it." *Temple v. Williams,* 91 N. C., 82. Mr. Starkie says, "When the parties are not the same, one who would not have been prejudiced by the verdict cannot afterwards make use of it, for between him and a party to such verdict the matter is *res novo,* although his title turn upon the same point." Starkie on Ev., 332.

"Judgments and decrees are conclusive evidence of facts only as between parties and privies to the litigation. And in case of former adjudication set up in defense, it is no bar unless the parties to the first judgment are the same as those to the second proceeding. On the principle that estoppels must be mutual, no person can take advantage of a former judgment or decree as decisive in his favor of a matter in controversy unless, being a party or privy thereto, he would have been prejudiced by it had the decision been the other way." Black on Judgments, section 534.

ALLRED *v.* SMITH.

We cannot more accurately state the principles underlying the doctrine of estoppel of record than by using the language of *Pearson, J.,* in *Armfield v. Moore,* 44 N. C., 157: "According to my Lord Coke, an estoppel is that which 'shuts a man's mouth from speaking the truth.' With this forbidding introduction a principle is announced which lies at the foundation of all fair dealing between man and man, and without which it would be impossible to administer law as a system. The harsh words which the very learned commentator upon Littleton uses in giving a definition of this principle are to be attributed to the fact that before his day 'the scholastic learning and subtle disquisition of the Norman lawyers (in the language of Blackstone) had tortured this principle so as to make it the means of great injustice': and the object of my *Lord Coke* was to denounce the abuse which he says had got to be 'a very cunning and curious learning' and 'was odious' and thereby restore the principle and make it subserve its true purpose as a *plain, practical, fair* and *necessary* rule of law. Estoppels must be mutual, that is, if one side is bound the other must be. It only includes parties and privies and does not extend to a stranger." Coke Litt., 252 *d.*

It is well settled that tenants in common are not privies; they do not claim under each other; they may claim their several titles and interests from entirely different sources. In this respect they differ from joint tenants and coparceners. "Tenants in common are they which have lands or tenements in fee-simple, fee tail or for terms of life, etc., and they have such lands or tenements by several titles and not by a joint title, and none of them know of this several, but they ought by law to occupy these lands or tenements in common." Coke Litt., 292.

"It is therefore sufficient description of tenants in common

that they are persons who hold by unity of possession." Kent Com., 367.

They may claim by deed, devise or descent, in either case they are deemed to have several and distinct freeholds, "that being a leading characteristic of tenancy in common." "Each tenant is considered solely or severally seized of his land." Kent Com., 368. They can in no proper or legal sense be called privies, because it is said: "In the law of estoppels privity signifies merely *succession* of rights, that is, the devolution in whole or in part of the rights and duties of one person upon another, * * * the derivation of rights by one person from and holding in subordination to those of another, as in the case of a tenant. No one can be bound by or take advantage of the estoppel of another who does not succeed or hold subordinate to his position." Bigelow on Estoppel, 347; Black on Judgments, 549. That tenants in common are not privies, and are therefore not bound by judgments rendered in actions brought by one of their co-tenants respecting the common property, is illustrated by the cases in which it is held that they are competent witnesses for their co-tenant. *Bennett v. Hetherington,* 16 Sergt. & R. (31 Pa.), 193, was an action of ejectment for the recovery of possession of the land held by the plaintiff and the witness. The demise was made by the plaintiff alone. *Gibson, C. J.,* after stating the principle that the interest which excluded a witness was not in the subject-matter of the action but in the result or event of it, and that it was not necessary that all of the tenants should join in the devise, said: "Here the plaintiff has elected to sue alone, and what would the witness get by his recovery? The possession of his freehold would not be restored; but for that he would have to bring a second action, in which the record in this would not be competent evidence." The same doctrine is held in *Hummett v. Blount,* 1 Swan (Tenn.), 385. It is held by this Court that

ALLRED *v.* SMITH.

a tenant in common may sue alone. *Carson v. Smart,* 34 N. C., 369. And in the action of ejectment he would recover to the extent of his right. *Holdfast v. Shepard,* 28 N. C., 361. It was held in England and in many of the States of the Union that tenants in common could not make a joint demise—that to do so would be calculated to perplex the jury with the trial of a number of titles in one issue. *White v. Pickering,* 12 S. & R., 435. In this case the Court said: "There is no privity between the plaintiffs, the estate of each is distinct from the other and they cannot join in a demise." For a discussion of this question, see Sedgwick & Wait on Trial, etc., 300, and cases cited. It was held by this Court in *Nixon v. Potts,* 8 N. C., 469, that they could join; the case being cited in *Hoyle v. Stowe,* 13 N. C., 318. *Ruffin, C. J.,* said that it was held "contrary to the rule in England, which is that as their title is several their demise must also be several. Their demise may be joint because, although they cannot jointly convey the land, they may jointly demise for years, since a demise for years is but a contract for possession, and *"their possession* is joint." No question of estoppel arose because "the judgment was not conclusive upon the title or right of property, even between the parties. The action could be repeated and the same question retried indefinitely because there was no privity between the successive fictitious plaintiffs. * * * Each successive ejectment was founded upon a *new* lease, entry and ouster." Sedgwick & Wait, section 42. The learning upon the subject is of interest, since the abolition of the action of ejectment, with its fictions, only as showing the reason upon which the doctrine of this and some other courts permitting a joint demise was founded. The changes made by The Code system by which the jury may, upon appropriate issues, ascertain and declare the interest or estate of each party, either plaintiff or defendant, cannot be extended to work a change in the

135——29

law of estoppel by record, by which one tenant in common may be estopped in respect to his title by a judgment in an action to which he was not a party. *Merrimon, J.,* says: "One tenant in common may sue in many cases without joining his co-tenant. Each has a separate and distinct freehold and he may sue to recover possession when he has been disseized." *Overcash v. Kitchin,* 89 N. C., 384. It is true that, as against a trespasser having no title, a tenant in common suing alone will recover possession of the whole land. If the land belongs to the plaintiff and others in common he has an undoubted right to expel an intruding trespasser and secure possession, his right being full and complete, although others have the same right. *Yancey v. Greenlee,* 90 N. C., 317; *Brittain v. Daniels,* 94 N. C., 781; *Gilchrist v. Middleton,* 107 N. C., 663. Because of this principle, it does not follow that if one tenant in common takes it upon himself to bring an action for the recovery of the common property, alleging title in himself or in himself and his co-tenants, and fails in his action, that his co-tenants are thereby estopped. If this be the law, may we not think, with my *Lord Coke,* that by reason of "a curious and cunning learning" estoppels will become "odious." This Court has never so held. In *Thames v. Jones,* 97 N. C., 121, the Court permitted the plaintiff to sue for the recovery of a tract of land "in behalf of himself and all other persons interested herein as plaintiffs." *Davis, J.,* said: "As to how far the judgment may affect persons made parties under this order we express no opinion. But independent of this, any one or more tenants in common may sue for the recovery of the possession of land."

In *Middleton v. Gilchrist,* 107 N. C., at page 684, *Avery, J.,* said: "One tenant in common may sue alone and recover the entire *interest* [italics ours] in the common property as against another claiming adversely to his co-tenants as well

as himself, though he actually prove title to an undivided interest.   This he is allowed to do in order to protect the rights of his co-tenant against trespassers and disseizors." We think the learned Justice inadvertently used the word *"interest"* instead of *possession*.   A careful examination of the authorities fails to disclose a single case in which this Court has said that the plaintiff can put in issue his co-tenant's *interest* in the common tenement.   The reason assigned by the learned Justice shows that the *"entire interest"* was not in issue.   When the plaintiff shows any interest in himself as against one having no interest he recovers possession of the *entire tenement,* because he is entitled as against a stranger "to the possession of every part and parcel of the subject-matter of the tenancy."   Freeman, section 87. When he secures such possession, it enures to the benefit of his co-tenants.   The same Justice had occasion to review the authorities in *Foster v. Hackett,* 112 N. C., 546.   He says: "It is obvious therefore that one of several co-tenants, when he brings an action against a trespasser on the common property and proves title of the other co-tenant in establishing his own, may, under the common law practice in ejectment, applied to actions for the possession of land, recover the whole, though he may claim sole seizin in his complaint in himself, just as he can do under the procedure prescribed in The Code (section 185) by alleging that the action is brought in behalf of himself and others having a common interest, though it has never been determined in this State how far, if at all, in the action under the provisions of the statute, the co-tenants not actual parties would be concluded by the judgment."   *Allen v. Sallinger,* 103 N. C., 14; *Lenoir v. Mining Co.,* 113 N. C., 513.   In *Winborne v. Lumber Co.,* 130 N. C., 32, *Clark, J.,* says: "One tenant in common can recover the entire *tract* against a third party, for each tenant is entitled to possession of the whole except against a co-ten-

ant." The correct principle is that in respect to the one unity—the possession—the acts of one tenant in common enure to the benefit of his co-tenant, as if an entry be made by one tenant: "As both have an equal right to the possession, the law presumes that if one only enters and takes the rents and profits he does this as well for his companion as for himself." Freeman on Co-tenancy, section 166; *Day v. Howard,* 73 N. C., 1; *Caldwell v. Neely,* 81 N. C., 114, and many other cases in our Reports. So the possession, or the bringing an action for possession, by one repels the bar of the statute as to all. *Locklear v. Bullard,* 133 N. C., 260. In respect to title, interest or estate to or in the common tenement they are strangers, and no act done by one can affect, enure to the benefit of or injure the other. Each tenant has a right, by reason of the unity or the fealty which each owes the other, to rely upon his protection of the common possession. In respect to the title no act by one can affect the other, as if one make a deed for the whole land and the grantee go in *possession,* his *possession* is that of the co-tenant and not adverse until the expiration of twenty years, when the law will presume an ouster. *Cloud v. Webb,* 14 N. C., 317; *Page v. Branch,* 97 N. C., 97, 2 Am. St. Rep., 281; *Breeden v. McLaurin,* 98 N. C., 314; *Ferguson v. Wright,* 113 N. C., 537. It would be an anomaly in the law if one tenant in common could, by matter *in pais,* deed, or record, estop his co-tenant in respect to his title, in regard to which they are absolute strangers. Our researches, with the aid of the excellent briefs of counsel, do not disclose any authority or reported case in which a party has been permitted to rely upon a judgment as an estoppel to which he was not a party or a privy, or which makes any exception to the well-settled rule that estoppels must be mutual. Applying these principles to the record before us we can have no doubt that his Honor was correct in overruling the demurrer. If

the action of Willie Allred against the defendant had resulted otherwise, we would not for a moment suppose that the plaintiffs, other than Willie, would be affected by it. Why they did not join her in the action is not suggested, nor are we to conjecture. For the purpose of testing the question, however, suppose that they had released their right of action to attack the deed, or that they were barred by the statute of limitations, or that they were of service to the plaintiff as witnesses—either of which reasons is consistent with the record—can it be that by absenting themselves from the action they can acquire title to property by an estoppel which they could not have acquired as parties to the action? If their contention be sound, the defendant is estopped as to them in the same manner and to the same extent as to Willie, the plaintiff. There is no suggestion that the judgment is competent as evidence; if of any efficacy it is a complete bar and "shuts the defendant's mouth to speak the truth." He has by estoppel lost the title to seven-ninths of a tract of land without having had an opportunity to defend it as against them. This would be to violate first principles and introduce new and dangerous exceptions to the fundamental limitations of the law of estoppels. It would no longer be entitled to the endorsement of judges, and surely it would surprise the great Chief Justice who so ably defended it in *Armfield v. Moore, supra.*

The plaintiffs say, that conceding the law to be as we find it, the effect of the judgment is to cancel, avoid and utterly destroy the deed; that it is "without legal efficacy, ineffectual to bind parties or to convey or support a right." 28 Am. & Eng. Ency., 28, page 473. The argument is ingenious but will not bear inspection. It assumes the very question in issue. As to whom is it void? The parties to the action? Let us reverse the proposition: If the verdict and judgment had been that the deed was valid and effectual,

could it be said that it was conclusively so as to the plaintiffs?
The answer is obvious. The rule of the law is plain, fair and
necessary, and it is just. But they say the judgment is *in rem*
and settles the *status* of *the deed*. It is not the paper upon
which the language of the law is written which vests the
title. The Court deals with the deed only as it affects title.
This Court has said that the record of a suit between A and
B in which the validity of the assignment of a note was
adjudged, is no evidence of the validity of such assignment
in an action between A and D, the latter not being a party
to the former suit. *Swepson v. Harvey,* 69 N. C., 387. The
action clearly was not a proceeding *in rem*. If *quasi in rem*
the plaintiff is met with the difficulty that in such actions
judgments are only binding between the parties. Black on
Judgments, section 793. To the suggestion that if defend-
ant is attacking the judgment as being erroneous, it is suffi-
cient to say that one not a party cannot take any advantage
of an eroneous judgment. If Willie Allred was claiming
the entire land because of the form of the judgment, the
suggestion would have some apparent force. There is
another view of this case not adverted to. If the plaintiffs
claim that they acquired certain rights of property under
the judgment, they should have set up the entire record
to the end that the Court could see what was in litigation and
what was adjudged. After a careful examination of the
authorities and arguments, we think that the judgment of
his Honor should be affirmed. It is a mistake to say that his
Honor rendered final judgment. The case was not before
the Judge for judgment, but only to pass upon the appeal
from the ruling of the Clerk on the demurrer. The Code,
section 254 and 255. His Honor's ruling remanded the case,
in so far as it was before him, to the Clerk. As the case
is in the Court for further orders, the plaintiffs may, if so

advised, ask for permission to reply to the answer.  Let this be certified.

Affirmed.

CLARK, C. J., dissenting.  In a proceeding duly constituted in a court of competent jurisdiction, and in which the defendant G. Dallas Allred was defendant, the jury found that Nancy Allred was without sufficient mental capacity to execute the deed to G. Dallas Allred covering the land in question, and the Court adjudged that said deed "from Nancy Allred to G. Dallas Allred is *void and of no effect.* And it is further ordered, adjudged and decreed that the said deed be delivered up and *cancelled of record,"* with further judgment that the decree should be certified to the Register of Deeds, to be recorded in his office.  The deed being adjudged "void and of no effect," the title of the grantee thereunder absolutely ceased (The Code, sections 426, 428) as fully as if a reconveyance had been executed and recorded. The proceeding was in the nature of an action to remove a cloud from the title, and the judgment, acting upon title to property, adjudging the conveyance to the defendant to the action to be *null and void,* and directing its cancellation and the registration of the decree in the register's office, where the conveyance to the defendant had been recorded, such proceeding has been held "though not strictly proceedings *in rem,*  *  *  *  yet they are regarded as proceedings *in rem sub modo."*  Hence the judgment cancelling the defendant's title rendered it invalid as to all the world, as is the case with all judgments *in rem.*  The matter stands therefore as if the conveyance to G. Dallas Allred had never been made.  He certainly is bound by the judgment.  The decree renders the deed void *ab initio,* and, if void, it is void as to every one, especially as to the plaintiffs who claim under Nancy Allred.  The decree having directed the cancellation

of the deed and the registration of the decree in the register's office, there is, in contemplation of law, no such conveyance in existence. The registration of the decree of cancellation was directed, that purchasers from G. D. Allred should have notice that he could convey no title. He cannot now set up a title when a purchaser from him could not acquire title from him.

It matters not at whose instance, as plaintiff, such decree was rendered, or that it was at the instance of only one of several co-tenants. It was rendered *against* the defendant; it binds him. Its effect was to declare that the title has never proceeded out of Nancy Allred and to cancel the conveyance and to strike the registration thereof off the register's books. It is not open therefore to the grantee in such deed to set it up as valid in this proceeding to partition the land, especially against the plaintiffs, who have acquired by descent all of Nancy Allred's title, save the share which has descended to him. He holds that share by descent, the same title by which the plaintiffs hold theirs, and not under the void deed.

If in the proceeding to declare the deed void it had been held valid, this would have been a judgment *in personam* against Willie Allred, the plaintiff therein, and would not bind the other plaintiffs herein because they do not claim under Willie Allred. But the judgment declaring the deed void and directing its cancellation acts *quasi in rem sub modo* upon the title which it sets aside, and is binding upon G. D. Allred, who is the same defendant, and who in this action attempts to set up the same title which, as against him, has been declared void. Further, being a decree *quasi in rem sub modo,* it is binding upon all who might claim under G. D. Allred. The decree of cancellation, registered as decreed, is notice to all the world. The Code, sections 426, 428.

Closely analagous is the case wherein an application of a railroad company to acquire the right to use the track of another company for purposes of its business, the applicant was held concluded by a former adjudication against its corporate existence, rendered in a former proceeding by the same plaintiff for the same purpose against another railroad company. (*In re Brooklyn Railroad,* 19 Hun, 314), and a determination that a creditor is entitled to share in a fund. *Eppright v. Kauffman,* 90 Mo., 25. The adjudication here that the deed is void is a judgment upon the *rem,* upon the status of the title, denying G. D. Allred's interest thereunder, and is conclusive upon him whenever and wherever thereafter he sets up title in himself under the deed which has been adjudged void and directed to be cancelled. The principle is *res judicata* and not strictly matter in estoppel. 24 Am. & Eng. Ency. (2 Ed.), 712. The judgment setting aside the deed to G. D. Allred, as void, enured to the benefit of the other plaintiffs, as co-tenants, who became thereupon beneficiaries under and privies to the decree which cancelled the deed. The legal consequence of the judgment, declaring the deed void as to G. D. Allred, can be availed of by strangers to the action. 11 Am. & Eng. Ency. (2 Ed.), 391.

The judgment is also admissible, even if between strangers, as a link in the plaintiffs' title, since it cancels the cloud cast upon it by the deed from Nancy Allred to G. D. Allred. 24 Am. & Eng. Ency., 757. Especially when, as here, the decree is a decree in chancery. *Ibid.,* 758, and cases cited in note 2.

It was error certainly to render final judgment upon overruling the demurrer, unless it was found that the demurrer had not been "interposed in good faith." The Code, section 272; *Moore v. Hobbs,* 77 N. C., 65; *Bronson v. Ins. Co.,* 85 N. C., 411.

The deed was voidable, *i. e.,* valid till declared void by the Court. *Odom v. Riddick,* 104 N. C., 515. But when adjudged void and directed to be cancelled, it ceased to be voidable and became absolutely void. No conveyance had been made to third parties by G. D. Allred prior to such decree. A conveyance by him thereafter would be void, and certainly no title remained in him when he could convey none.